GREAT SOUTHERN LAND CO. *et al. v.* VALLEY SECURITIES CO.

(Division B. November 9, 1931. Suggestion of Error Overruled January 4, 1932.)

[137 So. 510. No. 29537.]

124

**T. J. Wills**, of Hattiesburg, for appellant.

Stevens & Heidelberg, of Hattiesburg, for appellee.

132

**Anderson, J.,** after stating the case as above, delivered the opinion of the court.

In the distribution of the proceeds of the foreclosure sale, was the Land Company entitled to be credited with any attorney's fee whatsoever? The mortgage, as stated, made no provision for the payment of attorney's fees. There is no reference whatever in the mortgage to the fact that the notes evidencing the debt secured by the mortgage had any provision for the payment of attorney's fees; and the evidence showed without conflict that the Securities Company had no actual notice that the notes provided for the payment of attorney's fees. The fact that they do so provide was not referred to in any of the conveyances from the Land Company down to and including that to Mrs. Nix, the last vendee before the foreclosure sale. We think the case of Hardin v. Ross, 117 Miss. 186, 78 So. 2, is decisive of this question against the contention of the Land Company, and in favor of the contention of the Securities Company.

The question in that case was whether or not the holder of a deed of trust was entitled to demand attorney's fees in addition to the debt and interest thereon from a purchaser of the property embraced in the deed of trust, who bought with knowledge that it was being sold subject to the deed of trust of record. The indebtedness secured by the deed of trust was a promissory note, which provided for the payment of attorney's fees, but there was no reference in the deed of trust to the stipulation as to attorney's fees—no statement that it included attorney's fees. Caldwell and wife executed a deed of trust on land in Calhoun county to secure an indebtedness to one Barton. Default was made in the payment of the indebtedness, and the trustee, at the request of the bene-

ficiary, advertised the land for foreclosure sale. Before the day of sale, Hardin bought the land, and received a conveyance thereto from Caldwell and wife. Hardin thereupon tendered to the trustee the amount mentioned in the deed of trust, with interest thereon, and accrued expenses for the advertising, including the trustee's fee. The trustee, at the instance of the holders of the indebtedness, declined to accept the tender, whereupon the trustee resigned, and a substitute trustee was appointed by the holders of the indebtedness, and the land was again advertised for sale. Hardin then filed his bill of complaint, setting out those facts, and stating further that the land would be sold if the sale was not enjoined by the court, and that the trustee had refused to accept the amount tendered, described in the deed of trust, but had demanded in addition thereto one hundred sixty dollars by way of attorney's fees.

The court held that the attorney's fees not having been mentioned in the deed of trust, though named in the notes evidencing the debt, and the purchaser of the land having no notice of such fees being included in the debt secured, the trustee was not justified in refusing the tender by the purchaser of the land, and, the latter having enjoined the sale by the trustee, the beneficiary could not recover attorney's fees for defending such suit, "since their wrong caused the litigation and the attorney's fee, all of which was unnecessary."

The decision in that case is amply supported by authority. Our court held in Simmons v. Hutchinson, 81 Miss. 351, 33 So. 21, that constructive notice arising from the record of a muniment of title imputes only such knowledge as the instrument there recorded discloses, and not what diligent inquiry into its meaning might disclose; that it is only constructive notice of the contents of the paper there recorded, or intended to be recorded, and its particular contents only, and will have no opera-

tion or effect as to any. existing facts not described or pointed out in the recorded instrument.

To the same effect is Sack v. Gilmer Dry Goods Co., 149 Miss. 296, 115 So. 339. See, further, 23 R. C. L., p. 216, section 79, and case notes.

The Land Company contends that the following provision in its mortgage was sufficient to give the Securities Company notice of the fact that the notes secured by the mortgage provided for attorney's fees: "The parties of the first part have agreed that the hereinafter described property shall be kept free of all unsettled liens of any kind or character for any work or improvements on the property, or all unsettled judgments, or anything that might affect the equity of the said party of the second part."

As we understand the argument of the Land Company, it is that the stipulation in its notes, providing for attorney's fees, was an equity; and, seeing this provision in the mortgage, the Securities Company ought to have made inquiry of the Land Company as to what it meant; and that, if it had done so, it would have ascertained that the notes secured by the mortgage provided for the payment of attorney's fees. We are unable to follow this argument. In the first place, the stipulation in the notes for attorney's fees is not an equity; the right thereby conferred on the Land Company was purely legal, not equitable. And in the second place, under the authorities referred to, there is nothing in this language of the mortgage that points even in a remote degree to the fact that the Land Company's notes provided for the payment of attorney's fees.

The Land Company contends that, where a junior mortgagee purchases at the foreclosure sale of a senior mortgage, all interest of the junior mortgagee is thereby merged into the title to the land, and his mortgage indebtedness is thereby discharged; and therefore he is not entitled to have applied to his mortgage indebtedness

any surplus remaining after satisfying the senior mortgage; that this is especially true where the value of the land is sufficient to satisfy both mortgages, as the Land Company contends it was in this case.

The general rule is that, where a surplus remains after satisfying a senior mortgage, it should be applied on the junior mortgage. O'Reilly v. Hendricks, 2 Smedes & M. 388; Cage v. Iler, 5 Smedes & M. 410, 43 Am. Dec. 521; 41 C. J., pp. 1015 and 1017, sections 1475 and 1478. And this rule obtains where the junior mortgagee is the purchase at the foreclosure of the senior mortgage. A merger will not take place if it be apparent that the junior mortgagee, in purchasing, did not so intend, or that a merger is against his manifest interest. 2 Pom. Jurisprudence (2 Ed.), sections 791 and 793; Jones on Mortgages, section 848; Hartford Fire Ins. Co. v. J. R. Buckwalter Lumber Co., 116 Miss. 822, 77 So. 798. In this case our court cites with approval section 848 of Jones on Mortgages.

It is manifest, from the evidence in this case, that the Securities Company, by its purchase, had no intention to bring about a merger of its mortgage into its title to the land. On the contrary, the Securities Company used every available means at hand to prevent such a merger. In order to stop a foreclosure under the senior mortgage, the Securities Company tendered to the Land Company largely more than enough to discharge its indebtedness, with interest and expenses incident to the foreclosure advertisement. And immediately after the foreclosure sale, and the payment of the proceeds of the sale into the hands of the trustee in the senior mortgage, the Securities Company demanded of the trustee that he pay over to it, on its mortgage, the surplus remaining after the senior mortgage was discharged, which was done.

It is doubtful whether the Oklahoma and South Dakota cases relied on by the Land Company are authorities to the contrary; but, if they were, we would without hesita-

tion hold that, where a merger of the two estate was not intended, and especially where the merger is against the interest of the junior mortgage purchaser, no merger takes place. As we view it, that is the sounder and better rule.

The Land Company contends that the Securities Company had no valid mortgage indebtedness against the land, because its indebtedness was usurious. The facts relied on by the Land Company to show that the Securities Company's debt was usurious are as follows: The Securities Company lent Thomas only seventy-five thousand dollars; they took his notes for eighty thousand dollars, with interest thereon from their date, at eight per cent per annum. Therefore, under section 1946, Code of 1930, the contract (if a Mississippi contract) was usurious. The statute provides that, when a greater rate of interest than eight per cent per annum is stipulated for, or received, all interest shall be forfeited; and, if a greater rate than twenty per cent per annum is stipulated for, or received, both principal and interest shall be forfeited.

The Securities Company's notes were executed in the state of Louisiana, and made payable in the city of New Orleans, in that state. The Land Company contends that for that reason the transaction is governed by the laws of Louisiana, where the contract is not usurious, and not by the laws of Mississippi. We do not decide that question, because it is not necessary.

For the purposes of this decision, we treat the contract of the Securities Company as usurious under the laws of this state; and still it remains a fact that at the time of the foreclosure sale there was due the Securities Company, on its mortgage, the sum of seventy-five thousand dollars, which represents the actual amount it lent to Thomas, without interest. The interest stipulated for in the contract amounted to less than twenty per cent of the seventy-five thousand dollars actually lent; and

therefore, under the statute, the interest, and not the principal, is forfeited. The principal remained a valid charge against the property.

If there had been an acceleration clause in the Land Company's mortgage, under section 2170, Code of 1930, the Securities Company had the right to stop the foreclosure sale by tendering to the Land Company the amount of the overdue note alone, without attorney's fees, with trustee's fees and costs incurred.

The result is that the decree should be affirmed on direct appeal, and reversed on cross-appeal, and judgment rendered here in favor of the Securities Company in the additional sum of four thousand six hundred thirty-two dollars, with six per cent interest per annum thereon from the 18th day of February, 1929.

Affirmed on direct appeal, reversed on cross-appeal, and judgment here.