CBS REAL ESTATE OF CEDAR
RAPIDS, INC., Appellant,

v.

Joann E. HARPER, Appellee.

No. 66191.

Supreme Court of Iowa.

Feb. 17, 1982.

John M. Titler of Terpstra, Wilkinson &
Van Horne, Cedar Rapids, for appellant.

R. M. Fassler, Cedar Rapids, for appellee.

Considered by UHLENHOPP, P. J., and McCORMICK, ALLBEE, LARSON, and SCHULTZ, JJ.

UHLENHOPP, Justice.

This appeal involves usury and foreclosure problems in a suit on a note and mortgage.

On two occasions defendant Joann E. Harper borrowed money on her notes, each bearing 15% interest, from her employer, plaintiff CBS Real Estate of Cedar Rapids, Inc. Each time CBS itself borrowed the money from its bank at 15% interest. Harper was buying a home on contract, and she subsequently gave CBS a second mortgage on her equity in the home to secure the notes. Later she consolidated her indebtedness on the two notes into one note, likewise carrying 15% interest. At various times she made payments to CBS. At about the time she consolidated the two notes she also severed her employment with CBS.

Harper ceased making payments, and owed $4231 of principal on the indebtedness. CBS commenced the present action asking judgment for the unpaid principal of the consolidated note together with interest and costs including attorney fees, and for foreclosure of the mortgage. Harper counterclaimed for other items. Neither party claimed that this was a consumer credit transaction.

After trial, the court found that the note was usurious and gave CBS judgment against defendant for $4231 principal, without interest, costs, or attorney fees; denied foreclosure; and entered judgment against Harper for 8% interest on $4231 for the Linn County school fund. See § 535.5, The Code 1979; *Miller v. Gardner*, 49 Iowa 234, 239–40 (1878). The court denied the counterclaim. CBS appealed and in this court raises two issues.

I. *Usury.* The maximum interest rate for this note is ostensibly governed by section 535.2(3)(a) of the Code of 1979. Under that section the maximum was 11% on the dates on which the notes were originally executed. III Iowa Admin.Bull. 17 (July 9, 1980); *see Muchmore Equipment, Inc. v. Grover*, 315 N.W.2d 92 (Iowa 1982). Facially, therefore, the rate of 15% in the consolidated note was usurious.

CBS argues, however, that the consolidated note was not usurious for the reason that CBS is a corporation and under section 535.-2(2) it could lawfully borrow at 15%; that it did so in order to raise the money to lend Harper; and that it made no profit by re-lending the money to her at the same rate it paid, citing *Turner v. Younker Bros., Inc.*, 210 N.W.2d 550, 555 (Iowa 1973) (usury requires "the exaction of a greater *profit* than is allowed by law") (emphasis added).

CBS misconceives the meaning of profit in the quotation from *Younker Bros.* The term is not used in the sense of charging the debtor more for the use of the money than the lender paid for the use of the money. It means the price that the lender exacts from the debtor, ordinarily expressed as a rate of interest, for the use of the money.

CBS is right that "a lender in addition to the highest rate of interest could charge a reasonable fee for services rendered as for title examinations, recording fees, travel and commission expenses and credit reports provided such charges are for specific services and are in a reasonable amount." *Younker Bros.*, 210 N.W.2d at 560. *See also Iowa Savings & Loan Assn. v. Heidt*, 107 Iowa 297, 77 N.W. 1050 (1899); *Comstock v. Wilder*, 61 Iowa 274, 16 N.W. 108 (1883); *Smith v. Wolf*, 55 Iowa 555, 8 N.W. 429 (1881). Some courts have extended this rule to the lender's own interest expense in procuring the money. *Annot.*, 91 A.L.R.2d 1389, 1406 (1963). Under the facts of this case, we need not determine whether we would so extend the rule because we think that when the lender is a corporation it cannot in effect pass through its own usury exemption to its loans to individuals who have no such exemption. Any other result would permit corporate lenders to undermine the usury statute applicable to individuals by applying to them the unregulat-

ed rates that corporate borrowers may pay. Although the case is not precisely analogous on the facts, the principle is similar to that applied in *Kroll v. Windsor*, 259 Minn. 200, 107 N.W.2d 53 (1961). As demonstrated by *Younker Bros.*, we do not hesitate to look through transactions to their substance to determine whether usury exists.

An accommodation argument by CBS is likewise without merit. If a corporation as the *primary debtor* borrows money at a higher rate than individuals may be charged, an individual who guarantees the corporation's note is bound to the lender at the higher rate. *Doggett v. Heritage Concepts, Inc.*, 298 N.W.2d 310, 312 (Iowa 1980). This is because the corporation is actually the debtor and must respond over to the guarantor if the latter is compelled to pay the lender. Here, however, Harper, an individual, is the primary debtor; she is ultimately liable and has no right over against plaintiff corporation. The bank could not lawfully lend to Harper as primary debtor at 15% interest, and CBS cannot negate that result by itself borrowing at 15% and then lending to Harper at 15%.

CBS also argues that usury requires an intent to violate the law, again citing *Younker Bros.*, 210 N.W.2d at 555. The required intent, however, is simply to charge a rate of interest which exceeds the maximum permitted. *Id.* at 563 ("The only intent necessary is one to exact payments on either the revolving charge account or the retail installment contract in excess of the amount of interest allowed by law."). The record leaves no doubt about the intention of CBS to charge a rate which did in fact exceed the maximum.

The trial court was right in holding the interest rate in the note was usurious.

II. *Foreclosure.* The precise reason for the trial court's denial of foreclosure is unclear. Apparently the court did so because the note was usurious. This raises the question of whether courts will foreclose mortgages, pledges, conditional sales, guarantees, and other securities which secure performance of contracts containing usurious rates of interest. The starting point on this question is that usury does not exist apart from statute, and that the penalties for usury are those prescribed by usury statutes. 45 Am.Jur.2d *Interest and Usury* § 4, at 18 (1969) ("In the absence of statute, any rate of interest agreed upon by the parties is legal."), *Id.* at § 307 ("Forfeitures and penalties for charging usurious interest generally are dependent upon, and are imposed by, statute."); 91 C.J.S. *Usury* § 2, at 558, § 56a, § 142 (1955). *See also Younker Bros.*, 210 N.W.2d at 555 ("The common law has never forbidden the exactions of usury as a matter of general law."). Thus the consequences of usury in a transaction are to be ascertained by consulting the usury statute of the jurisdiction. If that statute declares usurious contracts void, obviously the contract and any security given for its performance cannot be enforced. On the other hand, if a usury statute prescribes some other penalty, such as loss of interest, then that is the penalty imposed, and the contract and its security are otherwise enforceable. As stated in 45 Am.Jur.2d *Interest and Usury* § 238, at 181–82 (1969):

> Many usury laws contain provisions, subsequently discussed, visiting penalties and forfeitures for usury which are similar to those imposed by the National Bank Act, but other statutes differ widely as to the effect of usury on a loan contract. Some laws expressly declare all contracts tainted with usury void, and in the absence of a showing that the usurious charge resulted from inadvertent error or a true mistake of fact, recovery may not be had thereon; the lender is prevented from recovering both principal and interest. Some of the other statutes do not invalidate contracts providing for usurious interest, but only accord to the borrower the personal privilege of setting up or waiving the defense of usury; some statutes declare usurious contracts void only so far as they relate to the illegal interest and permit the recovery of principal, but forbid the recovery of interest if the question is properly raised; and under other statutes, an obligation is un-

enforceable if usury appears from the face of the instrument, but if it does not appear from the face of the instrument, the excess is to be deducted and the principal sum advanced is to be enforced. A number of statutes merely prohibit the taking of more than a stated rate of interest, and while the early decisions construing them uniformly held that the taking of a greater rate than lawful would avoid the contract, the growing tendency is to hold the contract valid as to the lawful interest and avoid only as to the excess, so that recovery could be had of the principal or the principal with legal interest. Although there is some authority to the contrary, a like result has been reached in a number of jurisdictions where, in addition, violations of the lawful rate of interest are penalized in some way, the courts being held powerless to add to the express penalty provided by law by declaring the contract void. Under a statute making the taking of usurious interest a criminal offense, the charging of excessive interest is illegal, but the contract is not void.

The decisions are thus divided into two main groups, governed by the respective statutes involved. As stated in 45 Am. Jur.2d *Interest and Usury* § 241, at 184–85 (1969):

> Under statutes declaring every security or assurance growing out of a usurious contract void, usury in the principal obligation will void any collateral security supporting it, and in some jurisdictions, the defense of usury is available to the maker of a promissory note even when it is in the hands of a holder in due course. As a general rule, no rights may be acquired under a mortgage securing a usurious loan, which is void under such a statute, and a power of sale granted by it cannot be exercised, so that a sale made in pursuance thereof is a nullity, unless it is made to a bona fide purchaser. Likewise, a deed absolute in form which is void for usury cannot be foreclosed as an equitable mortgage.
>
> . . . .

In some jurisdictions, a mortgage securing a usurious obligation is not void, but is enforceable for the amount of the actual loan, with or without lawful interest, according to the terms of the particular statute involved. Where this rule obtains, a power of a sale in a mortgage is not invalidated by usury in the debt secured, and its exercise will not be enjoined unless the debtor brings into court the principal and the legal interest due. However, the defense that the mortgage debt is affected with usury is available to the mortgagor to reduce the lien of the mortgage to the sum actually advanced with lawful interest only so long as the mortgage remains executory; when the mortgage contract is executed by foreclosure or otherwise, and others have in good faith acquired an interest in the property, that expedient is no longer open to the borrower.

The two rules are explained as follows in G. Osborne, *Handbook on the Law of Mortgages* § 111, at 175, 176 (2nd ed. 1970):

> Usury statutes are of two kinds: one provides that the entire usurious obligation is void so that the creditor cannot recover any part of it; the other forfeits all interest in excess of the legal rate. . . . Under the first type of statute, since the debt itself is void and there can be no recovery by the creditor upon either an express contract or a quasi-contractual duty to pay any part of the sums loaned or interest on it, neither can there be any enforcement whatsoever by the creditor of the mortgage given to secure it.
>
> . . . .
>
> In states having the second type of statute the situation is fairly simple. The courts are influenced by the belief that there is a moral obligation on the debtor to pay his debts and that it is equitable to make him do so. They are further influenced by the theory that the lender incurs no penalty unless he actually takes usury.
>
> . . . .
>
> When the mortgagor attempts to use the statute as a defense in an action of

foreclosure by the mortgagee, instead of it being a bar causing a dismissal of the action, it will merely result in cutting down the mortgagee's decree to the amount of the debt plus lawful interest, with any excess interest previously paid being deducted as a set-off.

The authors state in 3 R. Powell, *The Law of Real Property* § 445, at 594, 595–96 (P. Rohan rev. 1981):

> Statutes differ in their provisions as to the effects which ensue a usurious loan. One group of statutes imposes only a forfeiture of the excess interest or inflicts a specified penalty. Under this type of enactment the mortgagor may secure a cancellation of the recorded mortgage upon paying his debt with lawful interest, and the mortgagee may foreclose, but only for the debt plus lawful interest.
>
> . . . .
>
> A second group is more drastic, completely invalidating the transaction, permitting the mortgagor to cancel the recorded mortgage without any payment and barring the mortgagee completely from foreclosure.

Illustrative of decisions denying foreclosure under statutes declaring usurious transactions void is *Jordan v. Humphrey*, 31 Minn. 495, 18 N.W. 450 (1884) (under act usurious contracts are "absolutely void"; hence security given for them is unenforceable); illustrative decisions holding that security is enforceable to the extent the contract secured is enforceable include *Burnhisel v. Firman*, 89 U.S. 170, 177, 22 Wall. 170, 177, 22 L.Ed. 766, 768 (1875) ("In Pennsylvania, where there is a statute making usury penal, but not declaring the contract void, the usurious bond and mortgage may be enforced for the amount actually due."); *Great Southern Land Co. v. Valley Securities Co.*, 162 Miss. 120, 137 So. 510 (1931) (interest forfeited under statute; mortgage held valid for principal); and *Briggs v. Industrial Bank of Richmond*, 197 N.C. 120, 147 S.E. 815 (1929) (mortgage valid for principal but statute forfeits the interest). Where a statute declared the interest forfeited, the court upheld foreclosure and stated in *Grove v. Great Northern Loan Co.*, 17 N.D. 352, 358–59, 116 N.W. 345, 347 (1908):

> Unless the statute declares that usury vitiates and renders void the notes and mortgages given therefor, then the proceedings are not void. There are no penalties or forfeitures for usurious transactions, except such as are prescribed by statute. The statute in force when the loan was made was the same as the usury law now is, and it is as follows: "The taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 5510 (5511), when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back in an action for that purpose twice the amount of interest thus paid from the person taking or receiving the same; provided, that such action is commenced within two years from the time the usurious transaction occurred." In addition to this forfeiture of interest in a civil action, the taking of usury is declared to be a misdemeanor by the Penal Code. Under section 5511 a rate of interest not exceeding 12 per cent. [sic] is lawful. It will be observed that section 5513 is silent as to the effect upon the contract or upon the securities or notes if usury is stipulated for or charged therein. The contract is not declared to be void by this section, nor is the effect of usury upon the contract mentioned therein. It prescribes only as to the penalty in case usury is charged or paid, and no mention is made nor can be read into the statute so far as affecting the contract is concerned. The penalties laid down by the statute, therefore, are the only ones that can be considered, as the rule is that the terms of the statute govern as to that question.

The Iowa statute on usury places us in the second category of decisions. It does not state that usurious contracts are void;

rather, it forfeits the interest to the creditor and obligates the debtor to pay 8% interest to the school fund. The penalty for usury is provided in section 535.5, The Code 1981:

> If it shall be ascertained in any action brought on any contract that a rate of interest has been contracted for, directly or indirectly, in money or in property, greater than is authorized by this chapter, the same shall work a forfeiture of eight cents on the hundred by the year upon the amount of the principal remaining unpaid upon such contract at the time judgment is rendered thereon, and the court shall enter final judgment in favor of the plaintiff and against the defendant for the principal sum so remaining unpaid without costs, and also against the defendant and in favor of the state, for the use of the school fund of the county in which the action is brought, for the amount of the forfeiture; and in no case where unlawful interest is contracted for shall the plaintiff have judgment for more than the principal sum, whether the unlawful interest be incorporated with the principal or not.

*See Shuck v. Wight*, 1 Greene 128 (Iowa 1848) (usury does not make contract void unless statute so provides—judgment on note and for foreclosure upheld under prior statute); *Haggard v. Atlee*, 1 Greene 44 (Iowa 1847).

■ Three Iowa decisions look in the opposite direction from the general rule stated in American Jurisprudence and the cases: *Tansil v. McCumber*, 201 Iowa 20, 206 N.W. 680 (1925); *Cox v. Douglas*, 12 Iowa 185 (1861); and *Kuhner v. Butler*, 11 Iowa 419 (1861). *Tansil*, in which the court said that foreclosure is denied in usurious transactions, is distinguishable on its facts. It involved such unconscionable conduct on the creditor's part that relief was deniable in equity under the clean hands doctrine—a doctrine that runs throughout equity jurisprudence. 27 Am.Jur. *Equity* § 136 (1966); 30 C.J.S. *Equity* § 93 (1965). In the course of the decision this court stated:

Plaintiff objects that usury is not pleaded. In the view that we take of the case, it is not necessary to consider the contracts from the technical standpoint of their being usurious. The answer is indefinite in its allegations, and does not set up usury as such. The answer does plead absence and failure of consideration, and very generally it is true that the plaintiff's claim is so unconscionable and inequitable that the suit should be dismissed. No objection on account of the indefiniteness of the pleadings or application for more specific statement was made. *Johnson v. Carter*, 143 Iowa 95, 120 N.W. 320.

The plaintiff is the actor and is seeking to enlist the aid of a court of equity in a case which does not appeal to conscience. The case has been as fully tried by both parties as if all the matters now being considered were properly pleaded. The facts before the court are such that the relief asked for would be inequitable. *Johnson v. Carter*, 143 Iowa 95, 120 N.W. 320. The items constituting the plaintiff's claim, and their inequitable character, appear from the plaintiff's own evidence. The court cannot ignore the facts before it, and appearing from the plaintiff's case, and give the plaintiff illegal compensation for the use of his money, simply because usury is not pleaded. The excessive and illegal charges are elements in the unconscionableness of the claim.

201 Iowa at 36–37, 206 N.W. at 687. The 1861 cases of *Cox* and *Kuhner*, however, simply hold that foreclosure is impermissible where usury appears. We now overrule those two cases and hold that security given under a usurious contract is ordinarily enforceable to the same extent as the contract itself. We confine *Tansil* to its facts and hold that a court may apply the clean hands doctrine and refuse to enforce security given under a usurious contract, if under all the circumstances unconscionable conduct on the part of the creditor appears.

■ The present case does not involve unconscionable conduct by CBS. Indeed, Harper's note carried the same interest rate that CBS had to pay to get the money. The

trial court should not have denied foreclosure on the ground of usury.

■ The record contains an intimation that the trial court may have denied foreclosure because Harper did not give the mortgage until after the loan came into existence. A precedent obligation, however, constitutes consideration for a mortgage. 55 Am.Jur.2d *Mortgages* § 100, at 257 (1971) ("a precedent debt or obligation is sufficient, as between the parties, of itself to support the mortgage"); 59 C.J.S. *Mortgages* § 91 (1949). CBS is not seeking priority over the titleholder to the property or over senior lienholders, and no junior lienholders are shown to exist; the action is solely between CBS as mortgagee and Harper as mortgagor. Nothing in chapter 654 of the Code, which governs foreclosures, provides that a mortgagee must join holders of senior interests in the property. A junior mortgagee may, as CBS did, obtain an adjudication solely between itself and the debtor. 55 Am.Jur.2d *Mortgages* § 571 (1971); 59 C.J.S. *Mortgages* § 627d(1) (1949).

The court should have decreed foreclosure for the amount of the judgment on the note, without interest, costs, or attorney fees, except that the judgment for the unpaid principal on the note, for interest in favor of the school fund, and for foreclosure of the mortgage will itself bear interest from its date until paid at the legal rate for judgments. *See Muchmore Equipment*, 315 N.W.2d at 101. We return the case to district court for such a supplemental judgment.

Costs are taxed to appellee.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.