**GRISWOLD STATE BANK, A State Banking Corporation, Plaintiff–Appellant,**

v.

**Gerald A. MILNE and Belma B. Milne, Defendants–Appellees,**

**Robert Peck and Celeste Peck, Defendants.**

No. 86–1066.

Court of Appeals of Iowa.

Sept. 30, 1987.

John M. Burns of Schmid, Ford, Mooney & Frederick, P.C., Omaha, Neb., for plaintiff-appellant.

James R. Van Dyke of Van Dyke & Werden, Carroll, for defendants-appellees.

Considered by OXBERGER, C.J., and SNELL and HAYDEN, JJ.

HAYDEN, Judge.

Plaintiff, Griswold State Bank (Bank), appeals trial court's ruling declaring null and void two mortgages sought to be foreclosed against defendants, Gerald and Belma Milne, and the notes allegedly secured by those mortgages. On appeal, the Bank asserts the decision of trial court was not supported by sufficient evidence and that the Milnes failed to sustain their burden of proof on their claim of fraudulent misrepresentation. We reverse and remand.

Our scope of review is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R.App.P. 14(f)(7).

**I. 1982 Mortgage.** For more than ten years prior to 1982, the Milnes transacted their borrowing, checking, savings, and other banking business with the Bank. These transactions included loans to finance their farming operation. These loans were extended in the form of individual notes for exact amounts, with the pro-

ceeds of each note credited to the Milnes' checking account. By July 1, 1982, the Milnes owed the Bank $131,505.00. Shortly thereafter, the Bank requested additional collateral for these notes. This request resulted in the execution, on July 27, 1982, of a mortgage on 185 acres of the Milnes' land, which purported to secure the notes to the extent of $116,000.00.

At the time of this mortgage, it is undisputed Gerald Milne was in poor health. He had suffered a heart attack on June 11, 1982, requiring hospitalization for ten days. Then on July 27th, the same day the mortgage was executed, Gerald was admitted to St. Joseph's Hospital in Omaha after registering poor results on a heart-stress test. At admission he was found to be well-oriented and in no acute distress.

Trial court explicitly declined to find Gerald's health rendered him unable to understand the nature of the documents he allegedly executed. Trial court concluded, however, the timing of Gerald's hospitalization on July 27th and the execution of the mortgage on the same day was not coincidental, but rather was attributable to the malevolent desire of the Bank to protect its position in the event of Gerald's death. The court did not find credible the Bank's assertion that its collateral policy was being changed during the time in question and that most of its customers received similar requests for additional collateral. The court found Milnes' net worth was sufficient to cover the notes. The trial court determined the farm land involved was not homestead property and would have been subject to judgment liens from any successful recovery on the notes. Trial court therefore concluded the only "purpose for the mortgage was that the Bank wanted to confirm its lien upon the real estate at a time when Gerald Milne's health was failing such that any transfer by Will or otherwise would be subject to the Bank's lien." The court further found the $9,000.00 note also executed July 27th was insufficient consideration for the mortgage and concluded the Milnes were not benefited by the mortgage transaction. Based upon the attendant medical circumstances, the Bank's allegedly improper purpose, and the perceived lack of benefit, trial court concluded the mortgage was unconscionable. It was therefore declared null and void. Trial court also ruled, alternatively, if the mortgage was not null and void, it should have been discharged. This conclusion was based upon the finding the mortgage only secured the $9,000.00 note executed the same day, which note the court determined could and should have been discharged by the Bank.

We conclude the trial court misinterpreted the mortgage in finding that it secured the $9,000.00 note and not the previous loans. As such, we disagree with trial court's finding there was insufficient consideration for the mortgage. We also disagree with its conclusion the Milnes were not benefited by the mortgage transaction and its findings relating the Bank's purpose to Gerald's illness.

■ The principles of interpretation and construction which govern contracts are also applied to mortgages to assist in identifying the intention of the parties. *Freese Leasing v. Union Trust & Savings Bank*, 253 N.W.2d 921, 924 (Iowa 1977). The following provision from the mortgage was relied upon by trial court:

> **CONDITIONED HOWEVER,** That if said Mortgagors shall pay or cause to be paid to said Mortgagee, or his successor in interest, said sum of money which shall be legal tender in payment of all debts and dues, public and private, at time of payment, all at the time, place, and upon the terms provided by one promissory note of Mortgagors to Mortgagee, *of even date herewith*, and shall perform the other provisions hereof, then these presents will be void, otherwise to remain in full force and effect. (emphasis supplied)

The court determined this provision dictated finding the mortgage secured only the $9,000.00 note since it was the only one executed "of even date herewith." This determination, however, misinterprets the parties' intent. The information supplied by the parties and typed onto the bar form mortgage, as opposed to the pre-printed

provision quoted above, clearly states the mortgage was in consideration of $116,-000.00 loaned to the Milnes by the Bank. Furthermore, the uncontroverted extrinsic evidence provided at trial was that the parties intended the mortgage to secure all of the Milnes' outstanding loans, at least to the extent of $116,000.00. We hold the mortgage secured those loans and not the $9,000.00 note. Since the mortgage was not therefore null and void upon the discharge of that note, the question of whether it was or should have been discharged is not relevant to this appeal.

The misinterpretation of the mortgage by trial court led to its findings that there was insufficient consideration for the transaction. It is plain this is not the case when the mortgage is properly interpreted. A precedent obligation constitutes consideration for a mortgage. *CBS Real Estate of Cedar Rapids, Inc. v. Harper*, 316 N.W.2d 170, 176 (Iowa 1982). Thus, the outstanding loans were sufficient consideration for the mortgage.

Trial court's finding that the Milnes were not benefited by the mortgage transaction is undermined by our finding of sufficient consideration to the extent the court relied upon a perceived lack of consideration. Trial court's finding is also undermined by the history of the business relationship of the parties. The Milnes had transacted their banking business with the Bank for a number of years, particularly the financing of their farming operation. The record reflects the Milnes were carrying an increasingly heavy debt load in the summer of 1982 and strongly intimates the Bank was disinclined to extend more funds to the Milnes absent some "shoring up" of collateral. The retention of this source of credit certainly constituted a further benefit to the Milnes, in addition to the outstanding loans serving as consideration for the mortgage.

The final factor trial court cited in concluding the mortgage was unconscionable was the Bank's improper purpose, as evidenced by the execution of the mortgage on the day of Gerald's admission to St. Joseph's Hospital. The court concluded it was "not a coincidence that the two mortgage documents were supposedly executed either on the day Mr. Milne went to the hospital or while he was already in the hospital with a heart condition." This conclusion is incorrect for two reasons. First, trial court apparently believed the 1982 mortgage was executed only a few days after Mr. Milne's discharge from his initial hospitalization. The record does not bear out this belief. As we noted earlier, the 1982 mortgage was executed on July 27th; Mr. Milne was discharged from his initial hospitalization on approximately June 21st. Second, trial court relies heavily on the execution dates provided by the documents in this case. The Bank, however, was less than conscientious in maintaining the accuracy of these dates or, for that matter, conforming to such niceties generally. Documents were sometimes post-dated to a predetermined closing date; and, as discussed below regarding the 1983 mortgage, signatures were acknowledged by a notary outside the presence of the signatories and possibly days after they had signed. Thus, trial court's reliance on these dates to find that the purpose of the Bank in obtaining the mortgage was related to the condition of Mr. Milne's health was misplaced. We find the purpose of the Bank was simply to secure additional collateral.

Trial court should have foreclosed the 1982 mortgage. We remand for that purpose.

**II. 1983 Mortgage and Note.** In 1983, Mr. Milne was again hospitalized at St. Joseph's Hospital in Omaha. His hospitalization extended from May 12th to May 24th. At approximately the same time, a master note providing the Milnes with a line of credit up to $190,000.00 was executed. It was secured by a mortgage executed shortly thereafter. The master note eliminated the need for the Milnes to execute a new note every time they needed funds for their farming operation. The purpose of the note was to pay off Prudential Insurance Company, holder of a first mortgage on the property in the amount of approximately $29,000.00, and to consolidate all of the Milnes' outstanding loans

while still providing them with operating funds for the 1983 farm year. It is undisputed the Milnes took advantage of this line of credit. At trial, however, Mrs. Milne testified she did not recall signing either the note or mortgage; nor did she recall whether her husband had signed them.

■ Trial court found the Bank did not meet its burden of proving due execution of the note and mortgage. In the alternative, the court found that even if duly executed, the note and mortgage were based upon fraudulent misrepresentation by the Bank. The court then declared both the note and mortgage null and void.

Trial court based its finding of lack of due execution on the following: Mrs. Milne denied the signatures were theirs. The acknowledgment of the mortgage by notary public Jean Jennings, a Bank employee, occurred on May 19th, while Mr. Milne was in the hospital in Omaha and could not possibly have personally appeared before Ms. Jennings in Cass County, Iowa. A reference on the note to the date of the mortgage had been changed from May 16 to May 12 on the original note and had been initialed by the parties, but that this change does not appear on the Milnes' carbon copy of the note which they produced from their records. The dates of the note, mortgage, acknowledgment, and recordation conflict, ranging from May 12th to May 23rd. And Mr. Milne's health was apparently failing, putting emotional stress on both Mr. and Mrs. Milne.

We address the weight to be accorded these factors in the order in which they were presented.

Trial court stated Mrs. Milne "denied that the signatures on the Master Note and 1983 mortgage were hers and Geralds [sic]." We have searched the record and find no such denial. Mrs. Milne did not *recall* ever seeing or signing those documents; she never, however, *denied* doing so. In fact, she testified she signed some documents brought to the hospital by Jean Jennings in May 1983, although she allegedly did not know what she signed. Clarke Gellerman, an officer of the Bank at that time, testified he thought the document delivered by Ms. Jennings was the 1983 mortgage. Both he and Ms. Jennings identified the signatures on the mortgage as being those of Mr. and Mrs. Milne. His identification was based upon approximately seven years employment at the Bank, handling many of the Milnes' banking needs; hers was based upon a friendship of nearly thirty years with the Milnes and her employment at the Bank.

■ The next factor trial court noted in finding lack of due execution was the false acknowledgment of the mortgage. However, the accuracy of the acknowledgment only affects the recordation of the mortgage, not its validity as between the parties. *Anderson v. Renshaw*, 229 Iowa 93, 96, 294 N.W. 274, 276 (1940). We do not approve of the loose banking practices utilized by the Bank in this instance, but they do not support a finding of lack of due execution.

Trial court also relied on discrepancies in the dates provided by the documents. First, the court suggested the Bank had altered the date of the mortgage on the note since it was changed and initialed on the original copy but not on the Milnes' copy. We find this was consistent with the practice of the Bank to postdate some documents to a predetermined closing date. It does not indicate lack of due execution; if anything, it suggests the Milnes did execute the note. It strains credulity to believe the Milnes did not execute a note granting them a line of credit up to $190,-000.00 when they have in their possession the borrower's copy of the note, upon which their purported signatures appear, and they have availed themselves of the credit provided.

The second discrepancy in the dates relied upon by trial court was that the dates of the note, mortgage, acknowledgment, and recordation conflict. If the provisions of the note and mortgage vary, they must be considered together. *Frenzel v. Frenzel*, 260 Iowa 1076, 1081, 152 N.W.2d 157, 160 (1967). If they are not in accord with each other, the provisions of the note control. *Id.* These principles provide for the

resolution of any future problem regarding the conflicting dates. We fail to see how this conflict, apparently not a problem presently, renders the execution of the documents invalid. We conclude it does not.

The final factor noted by trial court to justify finding lack of due execution was the poor health of Mr. Milne and the resultant emotional stress on both the Milnes. However, the Milnes did not assert, nor did the court find, the heart condition of Mr. Milne rendered him unable to understand the nature of the documents he allegedly executed. We therefore do not consider his condition as a factor supporting a finding of lack of execution.

We have considered all of the factors relied upon by trial court in concluding the Bank did not prove due execution. We find none of them persuasive. Our review of the record persuades us the Milnes executed the 1983 note and mortgage.

■ Trial court ruled, alternatively, that even if the Milnes executed the note and mortgage, such execution was induced by the fraudulent misrepresentation by the Bank. One of the purposes of the note was to provide funds to pay off Prudential Insurance Company, holder of a first mortgage on the property in the amount of approximately $29,000.00. This was meant to give the Bank the first lien on the property. The Prudential mortgage was never paid, leading trial court to conclude the Bank never intended for it to be satisfied. We disagree with this conclusion.

The record reflects Mr. Gellerman attempted to obtain the exact payoff amount from Prudential but was unable to do so due to Prudential's confidentiality policies.

There is no evidence in the record to suggest the Bank's stated intention that Prudential be paid was false. Furthermore, the Milnes were always free to pay Prudential directly. The money for the payment was to come from the line of credit provided by the note, whether Prudential was contacted by the Bank or by the Milnes.

■ We agree with trial court that in equity misrepresentations amounting to fraud in the inducement of a contract, whether innocent or not, give rise to a right of avoidance on the part of the defrauded party. *First Natl. Bank in Lenox v. Brown,* 181 N.W.2d 178, 182 (Iowa 1970). However, we do not find the Bank's representations regarding payment of the Prudential mortgage to have been false. Nor do we find these representations induced the Milnes to execute the note. The note provided them with a line of credit to continue the operation of their farm. This was their inducement. That part of this credit was to pay Prudential, to allow the Bank to have a first lien upon the property, was an inducement for the Bank, if for either party. We conclude fraudulent misrepresentation is not shown by the record here.

Trial court should have foreclosed the 1983 mortgage, as well as the 1982 mortgage. We remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**