KAISER AGRICULTURAL
CHEMICALS, INC.,
Appellee,

v.

Corliss G. PETERS, Appellant.

No. 85–1716.

Supreme Court of Iowa.

Dec. 23, 1987.

**438**

Dennis G. Larson, Decorah, for appellant.

Mark B. Anderson, Cresco, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, LAVORATO and NEUMAN, JJ.

McGIVERIN, Chief Justice.

Plaintiff's petition and defendant's counterclaim involved fertilizer furnished and applied to defendant's farm field. Defendant seeks review of two evidentiary rulings and certain jury instructions given by the court during the trial. In addition, defendant appeals the court's decision concerning his usury defense to plaintiff's petition. We affirm in part, reverse in part and remand.

We review for errors at law. Iowa R.App.P. 4. The trial court's findings of fact in the bench trial on the usury claim have the effect of a special verdict and are binding on us if supported by substantial evidence. *Id.; Midway Bank & Trust v. Moses,* 375 N.W.2d 292, 293 (Iowa App. 1985).

I. *Background facts and procedure.* Plaintiff Kaiser Agricultural Chemicals, Inc. (Kaiser) brought suit against defendant Corliss G. Peters on an unpaid account balance for agricultural goods including an unpaid bill for two truck tank loads of liquid fertilizer sold to Peters. The account balance, totaling $27,307.87, included $3,569.28 in finance charges assessed at 18% per year and compounded monthly. The parties stipulated that $18,922.76 of the principal balance of the account was not disputed and the jury was only asked to consider Kaiser's $4,815.83 claim based upon the two tank loads of fertilizer delivered to Peters.

Peters filed an answer denying the amount due for the liquid fertilizer delivered by Kaiser. He also alleged that the fertilizer failed to mix properly with herbicides as guaranteed. Peters counterclaimed for $48,400 in crop damage caused by the allegedly faulty fertilizer when applied to the defendant's corn field.

After trial, the jury returned a verdict giving Kaiser the amount due for the cost of the fertilizer of $4,815.83. Under the comparative fault act, Iowa Code chapter 668 (1985), the jury assessed 20% of the fault for negligent application and mixing of the fertilizer to Kaiser and 80% to Peters.

Peters additionally raised a usury defense to plaintiff's petition for the fertilizer value. This issue was tried by stipulation to the court without a jury. The trial court found insufficient grounds to support the usury defense.

The court entered judgment for plaintiff in the uncontested amount of $18,922.76 plus the principal of the disputed claim of $4,815.83 for a total of $23,738.59.[1] The court determined the interest to be allowed on Kaiser's award. Pursuant to Iowa Code section 535.2(1)(f) (1981),[2] Kaiser received 5% per year simple interest on the total award from a date six months after the

---

1. Because this case was tried in 1985 and defendant was found to bear a greater percentage of fault for defendant's damage than plaintiff, no judgment was entered on defendant's counterclaim in defendant's favor. *See* Iowa Code § 668.3(1) (1985).

2. The events precipitating this case occurred in the summer months of 1980. All references in this opinion, unless otherwise indicated, are to the 1981 code because the sections relevant to this case either became effective before the events in question happened or were unchanged from the 1979 code.

last entry was made on defendant's open account until Kaiser's petition was filed. Kaiser also was awarded 10% per year simple interest from and after the petition filing as required by Iowa Code section 535.3.

On appeal, Peters raises a number of assignments of error.

## II. *Evidentiary rulings.*

A. Amendment to answer to interrogatory after admission into evidence.

Peters first attacks the trial court's decision to allow Kaiser to amend a damaging answer given by Kaiser to an interrogatory by defendant after the answer was admitted into evidence. Before trial, plaintiff's answer was given in response to an interrogatory requesting a breakdown of the chemical content of fertilizer delivered by Kaiser to Peters. In the answer, Kaiser stated that the fertilizer contained 3.014% "free ammonia."

After the interrogatory answer was submitted into evidence at trial by defendant, counsel for the plaintiff noticed that the percentage of free ammonia listed was a typographical error. Plaintiff moved to amend its interrogatory answer and produced the chemical analysis report from which the interrogatory answers were derived. That report listed the free ammonia concentration at 0.14%. Other evidence admitted at trial indicates that the discrepancy was significant because a percentage in excess of .50% would cause the problems experienced by the defendant in mixing and applying the fertilizer. The court allowed the amendment over Peters' objections and he now appeals the ruling.

A party is under a duty to correct an interrogatory response once that party learns that the original response was incorrect. Iowa R.Civ.P. 122(d)(2)(A). Plaintiff moved to so amend its answer. Our rules of evidence allow a trial judge considerable discretion in administering the proceedings of a trial, and we believe the court acted properly within its range of discretion when it allowed the plaintiff to amend its interrogatory answer. *See Miller v. Bonar,* 337 N.W.2d 523, 527 (Iowa 1983);

*Beeck v. Kapalis,* 302 N.W.2d 90, 95–96 (Iowa 1981).

B. Admission of Kaiser's chemical analysis report.

Peters also objected to the court's ruling admitting Kaiser's offer of the chemical analysis report upon which the interrogatory answers were based. Because the test sample from a fertilizer supply storage tank was taken two months after the fertilizer truck loads were delivered to Peters, he contends that the analysis of the sample was not relevant. *See* Iowa R.Evid. 401. Significant testimony given before the exhibit was offered indicates that the liquid fertilizer in the storage tank was not altered or added to between the time Peters' loads were extracted from it and the test sample was taken. In light of this foundational testimony, we conclude that the laboratory report is relevant and that the time lapse affects only the weight to be given to the chemical analysis and not its admission in evidence. Iowa R.Evid. 402. No error appears here.

## III. *Instructions on proximate cause.*

Peters also complains that the court's jury instruction on proximate cause was improper. The court gave an instruction under the comparative fault theory. Iowa Code ch. 668 (1985). Peters takes the position that he was not at fault at all because Kaiser's employee gave Peters' employee instructions for getting the fertilizer to mix properly with herbicides after Peters' employee had trouble with the first batch and telephoned Kaiser for instructions. Peters asserts that Kaiser was the proximate cause of the problem and Peters was merely the instrumentality.

Peters' position assumes his employee properly followed the instructions as given, ignores the problems with the first tank load which his employee mixed alone, and discounts testimony from Peters' own employee that he ignored label instructions when applying the first tank load. Given this conflicting evidence, the question of proximate cause as to the difficulty in mixing the fertilizer with the herbicide was properly submitted to the jury. Although

Peters wanted an additional paragraph submitted to the jury explaining that the actions of one party alone could be the sole proximate cause of the problem, we conclude that the instruction as given sufficiently conveyed that concept.

We believe the instruction given comported with the evidence produced at trial and we find no error in the court's proximate cause instruction. *See generally* Iowa Code ch. 668 (1985).

IV. *Jury instructions on negligence.* Peters takes issue with the trial court's negligence instructions concerning his counterclaim. The court did submit a specification that plaintiff allegedly was negligent in instructing defendant as to how the fertilizer should be mixed with the herbicide. Peters states that the jury instructions, however, failed, *in toto,* to require that the jury decide whether Kaiser 1) negligently failed to inspect its fertilizer before delivery, and 2) failed to warn Peters of any altered condition of the fertilizer. Peters contends that there was sufficient evidence presented on these issues to raise a jury question; Kaiser contends there was not.

We do not directly address this submissibility dispute because the jury's verdict in light of jury instructions 18 and 19 shows that the jury in substance considered these issues and resolved them in Kaiser's favor.

The relevant portion of jury instruction 18 stated:

> If the plaintiff Kaiser has established [that it delivered the goods involved to Peters and the account is unpaid] by a preponderance of the evidence, then plaintiff Kaiser is entitled to recover in the amount of $4815.83, *unless you find that the defendant Peters has established by a preponderance of the evidence his affirmative defense as to plaintiff Kaiser's claim, as set out in Instruction No. 19.*

(Emphasis added.) Peters' defense outlined in jury instruction 19 stated:

> The defendant, Peters, asserts that plaintiff, Kaiser, is not entitled to recover for the sale of merchandise, as alleged, because:

> (1) The fertilizer was not as represented and

> (2) the fertilizer was damaged and contaminated and unusable.

\*　　\*　　\*　　\*　　\*　　\*

> To sustain this affirmative defense, the burden is upon the said Peters to establish by a preponderance of the evidence both of the following propositions:

> (a) That the fertilizer was defective in some particular, as asserted by Peters; and

> (b) That because of such defects, the fertilizer was valueless to Peters.

> If Peters has established one or more of the foregoing propositions by a preponderance of the evidence, then the plaintiff Kaiser would not be entitled to recover.

The jury found that Kaiser was entitled to recover the full price of the fertilizer. It follows, therefore, that the jury must have decided that Peters' contentions based upon alleged defects and unusability of the fertilizer were without merit.

■ Accordingly, we conclude that no reversible error occurred on this point in the court's refusal to submit the requested negligence specifications concerning defendant's counterclaim. *Cf. Automobile Underwriters Corp. v. Harrelson,* 409 N.W.2d 688, 692–93 (Iowa 1987) (court stated there was no need to address active/passive negligence issue on appeal as it may apply to indemnity claim because jury verdict held one of two possible tortfeasors was not negligent for purposes of contribution issue).

V. *Usury defense.* In an issue tried to the court alone, Peters asserts as a defense to plaintiff's petition that the interest rate charged by Kaiser on Peters' outstanding balance was usurious. Iowa Code section 535.4 contains the usury provision and reads:

> No person shall, directly or indirectly, receive in money or in any other thing, or in any manner, any greater sum or value for the loan of money, or upon contract founded upon any sale or loan of real or

personal property, than is in this chapter prescribed.

Whatever the amount of interest charged, Kaiser first contends that it could not have violated this section of the statute because Peters has not paid any interest, and therefore, Kaiser has not "received" any money, sum or value as required by the statute.

■ Kaiser's construction of section 535.4 is overly narrow and out of step with Iowa law. In *State ex rel. Turner v. Younker Brothers, Inc.*, 210 N.W.2d 550 (Iowa 1973), we adopted the four essential elements of usury as follows:

> (1) a loan or forbearance, either express or implied, of money or of something circulating as such; (2) an understanding between the parties that the principal shall be repayable absolutely; (3) the exaction of a greater profit than is allowed by law; and (4) an intention to violate the law.

*Id.* at 555 (citing 45 Am.Jur.2d *Interest and Usury* § 111 (1969)). Explaining the importance of these elements, the text in section 111 of 45 Am.Jur.2d at 97–98 on usury and interest continues:

> These elements must exist at the inception of the contract, since a contract which in its inception is unaffected by usury cannot be invalidated by a subsequent usurious transaction, nor, as a general rule, may a transaction that is usurious in its inception be subsequently cured. It is the agreement to exact and pay usurious interest, and not the performance of the agreement, which renders it usurious. The test to be applied in any given case is whether the contract, if performed according to its terms, will result in producing to the lender a rate of interest greater than is allowed by law, and whether such result is intended.

This language makes it clear that a creditor need not actually receive the amount charged in excess of the statutory ceiling to violate the statute. *See also Muchmore Equipment, Inc. v. Grover*, 315 N.W.2d 92 (Iowa 1982) (a 1% per month penalty clause in contract, applicable only if buyer defaulted, constituted usurious interest even though the buyer withheld payment of the last installment check and never paid any of the interest charge).

Although Peters did not ultimately pay any interest charges, he bases his assertion of usury first on a "modified agency contract" document signed by both parties and produced at trial by Kaiser in which the parties had agreed to 18% interest per year, or 1 and ½% per month, to be charged on the outstanding balance of agricultural products sold to Peters as sales agent for Kaiser. Peters also points to exhibit "A" attached to Kaiser's original petition labeled "statement of account." That exhibit listed the outstanding balance on goods sold by Kaiser to Peters with interest charges at 18% per year compounded monthly.

■ The trial court found that the modified agency contract was not applicable to the transactions between Kaiser and Peters. While the contract allowed interest on amounts charged to Peters, it listed Peters as an agent for Kaiser selling Kaiser products. As the trial court noted, Kaiser's account statement represented charges to Peters as a consumer for products Peters used in his farming operations. Reviewing the evidence, we agree that the transactions between Peters and Kaiser were not covered by the modified agency contract document.

Undoubtedly, however, there was an agreement between the parties. Kaiser sold various farming goods to Peters with the expectation by both parties that Peters would eventually pay for the goods. In his answer and counterclaim, Peters admitted to owing $18,922.83 of the account statement, the difference being due to the allegedly defective fertilizer and the interest payments. The account balance, therefore, represents an open end account. Iowa Code § 537.2202. The maximum amount of interest allowed on open end accounts is 18% per year, or 1 and ½% per month, for the first $500 and 15% per year, or 1 and ¼% per month, on amounts over $500, not to be compounded. Iowa Code §§ 537.-2202(2), (3); 535.11(6).

In its original petition, Kaiser asked for the interest amounts listed in the modified agency agreement, which clearly exceeded the maximum allowed by law. Kaiser moved to amend its petition to request the legal maximum interest rate after Peters filed its answer and counterclaim, but the trial court overruled the motion. The modified agency contract document was placed in evidence at trial by plaintiff Kaiser. Peters claims Kaiser's request is usurious. Applying the four elements of usury, we agree.

*Turner v. Younker Brothers* established that an open end or revolving credit account is a "forbearance" satisfying the first usury element. 210 N.W.2d at 555–59. As outlined above, the parties understood the principal was to be repayable absolutely, satisfying the second element. *See* Iowa R.Civ.P. 102. The interest charged by Kaiser in its account statement and in its petition exceeded the legal maximum for such contracts. *Cf. Rick Furniture Distrib. Co. v. Kirlin*, 634 S.W.2d 738, 740 (Tex.App.1982) (requesting usurious interest in pleadings was "charging" usurious interest under statute even though creditor amended petition after debtor counterclaimed for usury); *Hagar v. Williams*, 593 S.W.2d 783, 799 (Tex.App. 1979) (unilaterally placing amount due as interest on account statement qualified as "charging" interest under Texas usury statute).

Finally, the required intent under the fourth element of usury is "simply to charge a rate of interest which exceeds the maximum permitted." *CBS Real Estate of Cedar Rapids, Inc. v. Harper*, 316 N.W.2d 170, 172 (Iowa 1982). *Kaiser* clearly did so, triggering the usury penalty provision in Iowa Code section 535.5 which states:

> If it is ascertained in an action brought on a contract that a rate of interest has been contracted for, directly or indirectly, in money or in property, greater than is authorized by this chapter, the rate shall work a forfeiture of eight cents on the hundred by the year upon the amount of the principal remaining unpaid upon the contract at the time judgment is rendered, and the court shall enter final judgment in favor of the plaintiff and against the defendant for the principal sum remaining unpaid without costs, and also against the defendant and in favor of the state, to be paid to the treasurer of state for deposit in the general fund of the state, for the amount of the forfeiture. If unlawful interest is contracted for the plaintiff shall not have judgment for more than the principal sum, whether the unlawful interest is incorporated with the principal or not.

Accordingly, we reverse the trial court's decision on the usury issue and remand with directions.

VI. *Disposition.* We find no reversible error in the trial court's evidentiary rulings or jury instructions.

In view of our decision on the usury issue, we affirm judgment against Peters and in favor of Kaiser in the principal amount of $23,738.59. Interest and costs to Kaiser are forfeited. Iowa Code § 535.5. We reverse the balance of the judgment and remand with instructions to the trial court for entry of judgment against Peters and in favor of the state of Iowa to be paid to the treasurer of the state for deposit in the general fund of Iowa for 8% of $23,738.59. *See* Iowa Code § 535.5. Interest on the judgment shall run at the legal rate for judgments from their respective dates until paid. Iowa Code § 535.3. We further direct the district court to assess the costs in that court against Kaiser. Costs in this court are likewise assessed to Kaiser.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.