**L & T International Corporation,**
Plaintiff/Appellee,

v.

**Luis C. Benavente,**
Defendant/Appellant.
Appeal No. 96-025
Civil Action No. 95-0387
November 12, 1997

Argued and Submitted September 29, 1997

Counsel for Plaintiff/Appellee: Steven P. Pixley, Saipan.

Counsel for Defendant/Appellant: Douglas F. Cushnie, Saipan.

BEFORE: TAYLOR, Chief Justice, VILLAGOMEZ and ATALIG, Justices.

VILLAGOMEZ, Justice:

¶1 ■ Appellant Luis C. Benavente ("Benavente") appeals from a Superior Court summary judgment, in favor of Appellee L & T International Corporation ("L&T"), foreclosing on the mortgage covering Benavente's real property interest in two lots in Garapan, Saipan. We have jurisdiction pursuant to title 1, § 3102(a) of the Commonwealth Code. We affirm.

## ISSUES AND STANDARD OF REVIEW

¶2 1. Whether the Superior Court erred in ruling that a mortgage was created by the rescission agreement.

2. Whether the Superior Court erred in ruling that the mortgage covering the lots may be enforced.

3. Whether the Superior Court erred in ruling that a rescission agreement, which charges usurious interest, is not void.

¶3 ■ This case was disposed of by summary judgment and all three issues are issues of law. Therefore, our review is de novo. *Rios v. MPLC*, 3 N.M.I. 512 (1993).

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On March 2, 1989, Benavente entered into a written contract to act as the agent for Japanese-owned corporations, Kabushiki Kaisha Nikkei, Tokai Kogyo Co., Ltd., and Tokai Saipan, Inc. (or collectively "Tokai"), in their attempt to acquire land in Tanapag, Saipan. Tokai gave Benavente over $3,000,000 in order for him to acquire this land. Benavente signed a promissory note and a mortgage on his two lands in Garapan, namely lots 010 D 22 and 010 D 23, as security for this money. Benavente did not obtain the Tanapag land, kept the money and defaulted on the promissory note.

¶5 In 1991, Tokai filed a suit in court against Benavente to recover the money. On April 2, 1992, Tokai and Benavente entered into a "settlement agreement and mutual release." This agreement provided in part that Tokai would make a payment allegedly owed to Alicia Galang by Benavente no later than June 15, 1992. In exchange for this payment, Benavente agreed to pay Tokai either $484,500 on or before October 1, 1992, or $534,500 between October 2, 1992, and January 1, 1993. If Benavente did not make the payment then Tokai was authorized to record two lease agreements covering lots 010 D 22 and 010 D 23 in favor of Tokai for 55 years. Benavente did not make either payment as scheduled and both leases were recorded, one on October 2, 1992, and the other on January 5, 1993.

¶6 In order to pay Tokai the $534,500, Benavente borrowed this sum from Century Finance, a company affiliated with L&T. On January 22, 1993, two weeks

after Tokai had completed recordation of its leasehold interests, L&T loaned $600,000 to Benavente and was assigned both of these leases by Tokai. Out of this amount, $534,500 was paid to Tokai, and $65,500 was paid directly to Benavente. On this same date, L&T and Benavente signed a "rescission agreement" which provided that Benavente had a right of redemption of the leases if he paid to L&T $785,000 by July 14, 1993. Benavente did not make the payment as agreed. Benavente did not execute a promissory note or a "statutory mortgage"[1] in favor of L&T for the $600,000. Out of the $785,000 to be paid, $185,000 represented interest for the six-month period on the $600,000.

¶7    On April 27, 1995, L&T filed an action to collect under the rescission agreement and to foreclose on the mortgage covered by the two leases. Benavente raised as affirmative defense that the mortgage documents are not in compliance with Commonwealth Real Estate Mortgage Law. The Superior Court granted summary judgment in favor of L&T, and Benavente timely appealed.

### ANALYSIS

**1. Whether a Mortgage was Created by the Rescission Agreement.**

¶8    Benavente argues that the rescission agreement did not create a mortgage covering the two Garapan lots. Instead, he argues that the leases on the two lots which were employed solely to secure a repayment of an initial loan by Tokai and then a loan by L&T, created the mortgage. Because this mortgage does not meet the statutory requirement of the Commonwealth Real Estate Mortgage Law, it is defective and, therefore, L&T cannot foreclose on the two lots. We do not find any error.

¶9    The Commonwealth Code provides that: "Every transfer of an interest in property, made only as a security for the performance of another act . . . shall be deemed a mortgage." 2 CMC § 4518. A mortgage is "a contract in which real property is made the security for the performance of an act, usually the payment of a debt without the necessity of a change of possession and without the transfer of title." 2 CMC § 4513(e).

¶10   ■ The form of the agreement, whether it be labeled a note and mortgage or a rescission agreement, is not important. If the purpose and intent behind a transaction is to secure a debt, a court of equity will consider the substance of the transaction and give effect to that purpose and intent. *Garnett State Sav. Bank v. Tush*, 657 P.2d 508, 514 (Kan. 1983), citing *Fuqua v. Hanson*, 567 P.2d

862 (Kan. 1977); *see also*, *First Nat. Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 503 (Minn. 1981) (when the real nature of the transaction is that of a loan advanced upon the security of realty it will be treated as an equitable mortgage without regard to the actual form of the instrument of conveyance); *O'Connor v. Lewis*, 776 P.2d 1228, 1231 (Mont. 1989) (court would find an equitable mortgage if there was written evidence indicating the mortgagor's intent to subject the real property to a security interest in favor of the lender).

¶11   Benavente stated that his intent was to pledge the Benavente Building and the Nara Restaurant property as security for the $600,000 loan. By his own admissions, his purpose and intent in signing the rescission agreement and lease agreements was to secure a debt. Benavente also repeatedly admitted during the proceedings of this case at the Superior Court that the rescission agreement he had entered with L & T was a mortgage.

¶12   In the instant case, the rescission agreement together with the leases created the mortgage. The mortgage is not a statutory mortgage but an equitable one. Benavente has repaid nothing of the $600,000 which L & T loaned to him. Therefore, the equitable mortgage still exists.

**2. Whether the Mortgage may be Enforced.**

¶13   Benavente asserts that since he did not execute a promissory note and the mortgage does not fully comply with the Commonwealth Real Estate Mortgage Law, it cannot be enforced. We do not agree.

¶14   ■ Foreclosure of a mortgage is an equitable proceeding. *Farm Credit Bank of Spokane v. Parsons*, 758 F.Supp. 1368, 1371 (D.Mont.). "[C]ourts of equity are governed by flexible, not cast-iron rules, which call upon courts of equity to adapt themselves to the exigencies of the particular case." *Id.* (citations omitted). An "equitable lien or an equitable mortgage will be invoked by the courts when an intended security interest proves defective." *O'Connor v. Lewis*, *supra*, 776 P.2d 1228 (Mont. 1989); *Gust v. Peoples and Endelin State Bank*, 447 N.W.2d 914 (N.D.) (equitable mortgage invoked to protect mortgagee, whose collateral mortgage lapsed due to failure to file a statutorily required extension). *Hill v. Hill*, 345 P.2d 1015 (Kan. 1959). "When the real nature of the transaction between the parties is that of a loan, advanced upon the security of realty granted to the party making the loan, it may be treated as an equitable mortgage without regard to the actual form of the instrument of conveyance." *First Nat. Bank of St. Paul v. Ramier*, *supra*, at 503.

¶15   Benavente received $600,000 from L&T in the form of a loan. The loan was secured by the lease agreements. Benavente cannot now to say that, because he did not sign any promissory note as to the repayment of the loan, he is excused from repaying the $600,000 he owes L&T.

---

[1] This term is used to mean a mortgage pursuant to and in full compliance with the CNMI Real Estate Mortgage Law. 2 CMC § 4511 et seq.

¶16 The rescission agreement and the leases, read together, created an equitable mortgage covering Benavente's two Garapan lots. As such, there is no need to satisfy the statutory requirements of the Commonwealth Real Estate Mortgage Law. There being an equitable mortgage, the Superior Court has the authority to enforce the mortgage.

### 3. Whether an Agreement which charges Usurious Interest is Void, and whether the Mortgage thereon is Void and Unenforceable.

¶17 ■ Usury is prohibited in the Commonwealth under 4 CMC §§ 5301, 5302, and 5303. 4 CMC § 5301 prohibits the enforcement of usurious interest, defined as interest greater than one percent per month (or 12 percent per year) on a principal sum greater than $300. 4 CMC § 5302 mandates that payments made on usurious interest offset future principal payments. 4 CMC § 5303 makes usury a misdemeanor. Significantly, none of these sections voids a transaction that charges usurious interest. Rather, section 5302 indicates that the principal obligation will be unaffected by a finding of usury, and that only the interest in excess of the legal maximum will be invalid.

¶18 This interpretation is in line with the majority rule where a statute does not expressly declare the entire transaction void. *De Wolf v. Johnson*, 23 U.S. 364 (1825) (obligation to pay principal valid despite finding of usury); *Oates v. First Nat. Bank*, 100 U.S. 239 (1879) (court could not order entire contract void unless statute expressly directed); *Schuran v. Walnut Hill Assoc.*, 606 A.2d 885 (N.J. Super. 1991); *Lloyd Capital Corp. V. Pat Henchar, Inc.*, 544 N.Y.S.2d 178 (N.Y. Sup. Ct. 1989); *CBS Real Estate of Cedar Rapids v. Harper*, 316 N.W.2d 170 (Iowa 1982); *Anderson v. Curls*, 309 S.W.2d 692 (Mo. 1958) (usury invalidates only that part of an agreement which provides for illegal interest, and allows for recovery of the actual debt and legal interest).

¶19 Therefore, the Superior Court is correct in holding that the usurious interest charged in the rescission agreement does not vitiate Benavente's obligation to repay the principal amount of $600,000 plus the maximum legal interest of 12 percent.

### CONCLUSION

¶20 For the reasons set forth above, we hereby **AFFIRM** the Superior Court's grant of the summary judgment.