Mr. Justice Pray
delivered the opinion of the court.
The bill in this case is based upon an indenture of which the following are the effective parts:
This indenture, made and entered into the 18th day of February, 1837, between Benjamin G. Sims of the first part, Henry J. Shackelford, William J. Wills, and William M. Rives, of the second part, and Thomas Hundly of the third and last part, witness-eth that, whereas, the said Sims is justly indebted to the said Hundly in the following sums of money, &c. &c.
And the said Sims being desirous to secure to said Hundly the punctual payment of all and each of said sums of money with all interest that may lawfully accrue on the same or any part thereof; *897 tliis indenture farther witnesseth, that the said Benjamin G. Sims, for and in consideration of the sum of five dollars to him in hand paid by the said Shackelford, Wills, and Rives, the receipt whereof is hereby acknowledged, hath granted, bargained, and sold, and by these presents, doth grant, bargain, and sell, unto the said Henry J. Shackelford, William S. Wills, and William M. Rives, and their assigns, the following negro slaves for life, and the future increase of the females, &c. &c.
And the said Sims for himself and his heirs shall and will warrant and defend unto the said Shackelford, Wills, and Rives, and their assigns, a good and sufficient title to the said slaves and their natural increase, free from all lawful claims whatever; upon trust, nevertheless, that the said Shackelford, Wills and Rives, shall permit the said Sims to retain possession of said slaves and their increase, and appropriate the profits of their labor to his own use, until default occur in the payment of the sums of money herein specified or any part thereof; and that upon such default in the payment of said sums of money, or either, or any part thereof, the said Shackelford, Wills and Rives, or any, or either of them, or the lawful representative of the survivor of them, shall, and will, if thereto requested by said Sims and Hundly, or either, or the assigns or representatives of either, proceed to sell to the highest bidder, at public auction, for ready money, all the aforesaid slaves and their increase, or so many as may be sufficient, having given sixty days’ notice of the time and place of sale, in a newspaper ? published in Hinds county; and from the proceeds of such sale} after defraying the expenses thereof, pay to the said Hundly, or his assigns, so much of the sums of money aforesaid, as may be then due and in arrear, and all costs and interest that may have lawfully accrued on the same; and in like manner, on like notice^ and for like purposes, continue from time to time, to sell the balance and remainder of said slaves and their increase, or so much as may be sufficient whenever the said sums, or any or either, or any part of either may become payable and be not punctually paid. And from the proceeds of such second and other sales, after defraying the expenses thereof, pay to the said Hundly, or his assigns, so much as may at that time be due and in arrear, of the *898 sum or sums aforesaid, and all costs and interest that may have lawfully accrued thereon, it being the true interest and meaning thereof, that the said trustees, any two or either of them, or the lawful representative of the survivor of them, shall and will proceed to sell, in manner aforesaid, the said slaves and their increase, or so many as may be sufficient, whenever the said sums, or any or either of them, or any part thereof, become due, and be not punctually paid.
But if the said sums be paid and discharged by the said Sims, with all lawful costs and interest, so that the whole and every part be paid to said Hundly, or his assigns, then this conveyance shall be released and become null and void, otherwise to remain in full force and virtue.
In witness whereof, we have hereunto set our hands and seals the day and year first above written. Signed by Sims, Rives, and Hundly.
The bill charges fraud in Hundly in obtaining this indenture, and also usury, in relation to some of the payments under it.
The answer denies all fraud: and as to the bill of exchange which the complainant charges to be usurious, he admits the facts stated by him, but denies that they constitute usury, and avers that the bill has long since been paid.
In this case, an injunction had been awarded to prevent a sale of the property specified in the indenture by the trustees therein named. A motion was made to dissolve this injunction, upon the bill and answer, and was sustained in the court below.
From the order dissolving this injunction, the complainants appealed to this court.
The case as here exhibited, presents two questions for our consideration:
1. Whether the trustee named in the indenture can lawfully sell the property therein specified without an application to, and an order from a court of equity.
2. If the trustee can so sell, whether such sale would be an effectual foreclosure of the equity of redemption on the part of the grantor.
In reference to the first question, it may be proper to remark, *899 that mortgages of this description are comparatively of modern date. Their validity was at first much questioned, and when the doubts surrounding their introduction were removed, they were for a considerable time,’ and are even now, in some degree, viewed as a harsh measure. A mortgage of this description,- is certainly a prompt, powerful security, compared with the common mode of mortgaging. It is, however, not inequitable in its results. It presses hard upon the mortgagor in point of time, but it takes no unfair advantage of him in the end, for after payment of the money lent or debt secured, the surplus is handed over to the mortgagor. The evil of the former mode of mortgaging is, that the mortgagee, in proceeding to the recovery of his money, is liable to be delayed for an indefinite term in chancery. The new mode is framed with a view" to a settlement out of court.
The principal objection in this mode of security to a mortgagor is, that in one or two months he may be bereft of his property, perhaps an endeared residence,’‘of family servants, without ample opportunity being given for the disposal of it to the best advantage. The security in review may be deemed oppressive as it regards the mortgagor, but as the primary subject for consideration in negotiating a loan is the perfect and easy security of the mortgagee, the mortgagor’s must of necessity be of secondary consequence. A mortgagee, in assisting his mortgagor, should be supposed to have bespoke the removal of all obstacles in obtaining repayment of his money; but a court of equity which favors a purchaser throws in the way of the mortgagee so many obstacles, that the ordinary mode of mortgaging has become highly inconvenient as it regards the party whose interests should appear to be the first to be respected. With reference to the new mode of security, a few considerations will show, that if the balance of fail-dealing be out of equipoise, the scale at least preponderates on the side it ought to fall. But it is believed, that on a candid view of the circumstances, the'justice of the case will be found nearly equal. ■ The mortgagor must raise money. Now if he cannot borrow he must sell. To save the pain of a sale, which rarely coincides with the wants and views of the seller,’he allays his necessities by a loan. How, then, at a future period, can he complain *900 of the hardship' of a sale, when he has had the interval to make his bargain in, and when, be it observed, he receives the produce of the sale after payment of the debt and costs? Under this view of the subject, it is conceived, that there is really nothing harsh or unjust towards the mortgagor in this mode of mortgaging with powers of sale vested in a trustee; and it is believed, that the guiding principle in reviewing transactions of this nature, should be rather to afford facilities for the accomplishment of the intention of the parties, than to oppose or obstruct that intention, by dilatory precautions and impediments..
Entertaining these views on the subject, we are perfectly satisfied that the trustee is fully competent to execute the trust with which he is vested by the mortgage without the aid of a court of chancery; and in this opinion, we are sustained by the English courts when acting on instruments of precisely the same character.
In reference to the. second question, it may be remarked that, in England, where this description of mortgage originated, it was doubtful for a time, whether a purchaser from the trustee, acquired an irredeemable title without the mortgagor joined in the conveyance. But in 1802, this point was fully settled. The English cases concur in establishing the rule, that trustees for sale, in default of payment of the mortgage money, are competent to make a good irredeemable title, without the consent of Ihe ‘mortgagor-, or his representatives.
The first case when this question was decided in England, was the case of Clay v. Sharp. A mortgage of leaseholds was made to a trustee, with the usual power of redemption, and it was agreed, that on default of payment of the money, the trustee might sell the estate, pay off the mortgage money, and refund the residue to the mortgagor. Default was made in payment; the trustee sold the estate by public auction, and the purchaser required the concurrence of the mortgagor, who refused to join, insisting that the sale was made without his consent, and at an undervalue. Upon which the purchaser filed a bill against the trustee, and the mortgagor, (who, afterwards, becoming a bankrupt,) the purchaser filed a supplemental bill against his assignees. On the hearing of the cause, the court dismissed the bill, as against the mortgagor *901 and his assignees,.with costs; and decreed a specific performance against the trustee. Cited in Sug. Vend. App. 21.
Prom this examination of the facts and law, as applicable to the case before us, we are satisfied that the trustee may, in good faith, sell the property specified in the indenture or mortgage according to its terms, without the aid of the court of chancery; and that such sale is a perfect foreclosure and bar to the equity of redemption oh the part of the grantor or mortgagor.
The order of the court below, dissolving the injunction, must, therefore, be affirmed with costs.