# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CA-00792-SCT

*WBL SPO I, LLC*

*v.*

*WEST TOWN BANK & TRUST*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/15/2021 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| TRIAL COURT ATTORNEYS: | ROBERT ALAN BYRD |
| | DAVID A. WHEELER |
| | ROBERT THOMAS SCHWARTZ |
| | JOSHUA WAYNE STOVER |
| | JOHN MARTIN LASSITER |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN MARTIN LASSITER |
| | JOSHUA WAYNE STOVER |
| ATTORNEY FOR APPELLEE: | DAVID A. WHEELER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED. |
| | ON CROSS-APPEAL: AFFIRMED - 04/20/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. A valid foreclosure sale extinguishes all subordinate rights in the property, which are transferred to the proceeds of the foreclosure sale.[1] But what happens when there are no

---

[1] *Peoples Bank & Tr. Co. v. L & T Devs., Inc.*, 434 So. 2d 699, 708 (Miss. 1983), *judgment corrected*, 437 So. 2d 7 (Miss. 1983).

proceeds? What if the foreclosing creditor purchases the property for a price that does not satisfy its own indebtedness—let alone that of a junior creditor?

¶2. That is what happened here. And in this scenario, the junior creditor, WBL SPO, LLC (WBL), claims it is entitled to sue the foreclosing creditor, West Town Bank & Trust (West Town), for not bidding a high enough price for the property. Both West Town and WBL held security interests in a hotel in Biloxi, Mississippi. WBL claims it is entitled to an "equitable credit" in the form of money damages for the difference between the amount West Town purchased the hotel at the foreclosure sale and the allegedly higher commercially reasonable value of the property.

¶3. The trial court rejected WBL's equitable-credit claim. And we do too.

¶4. The sole case WBL relies on for its claim that it has a legal right to sue West Town is *Shutze v. Credithrift of America, Inc.*, 607 So. 2d 55 (Miss. 1992). But *Shutze* is easily distinguished on its facts. *Shutze* was a lien-priority case involving a future advance clause—something *not* at issue in this case. *Id.* at 57. Moreover, the potential equitable credit contemplated in *Shutze* was just that—an *equitable* claim against possible surplus proceeds from the sale of the foreclosed property, which had to be determined on remand. *Id.* at 66.

¶5. *Shutze* did not create the *legal* remedy WBL now seeks—money damages against the foreclosing senior lienholder based on an allegedly low bid price. Because WBL's claims against West Town were based on an asserted legal right that does not exist, West Town was

entitled to summary judgment as a matter of law. So we affirm the grant of summary judgment to West Town on all of WBL's claims.

¶6.     We also affirm the dismissal of West Town's counterclaim.

## Background Facts & Procedural History

### I.     The Two Lienholders

¶7.     Lien priority is not at issue. There is no dispute that West Town had the first mortgage on the foreclosed hotel in Biloxi, Mississippi. In 2015, West Town loaned $4.4 million to DIA Lodging and DJ Lodging (collectively, DJ Lodging). The loan was secured not only by the Biloxi hotel but also by another hotel in Forrest City, Arkansas. At the time of the loan, the preloan appraisal valued the Biloxi hotel at $5.45 million.

¶8.     WBL had the second mortgage on the Biloxi hotel. In August 2019, WBL provided DJ Lodging with two business loans totaling $555,000. Both loans were secured by the Biloxi and Arkansas hotels. One loan, in the amount of $280,000, was to be repaid over the span of five months in weekly payments of approximately $14,600. The other loan was to be repaid over the span of a year in approximately $8,000 weekly payments. Prior to its loaning the money, WBL obtained an appraisal that valued the Biloxi hotel at $3.8 million and the Arkansas hotel at $2.75 million.

### II.     The Foreclosure Sale

¶9.     DJ Lodging quickly fell behind on its weekly payments to WBL. It also defaulted on its payments to West Town. Based on the default, West Town informed WBL of its intention to commence a nonjudicial foreclosure. West Town had obtained an appraisal of the hotel

3

in January 2020 that indicated the fair market value of the property was $2.75 million. The year before, in February 2019, West Town had obtained an appraisal from a different firm valuing the property at just $1.7 million. West Town decided to split the difference between the two appraisals and make a $2.195 credit bid at the foreclosure sale. West Town avers that, at the time of foreclosure, DJ Lodging still owed $4.5 million.[2] And WBL was owed half a million dollars.

¶10. On February 5, 2020, minutes before the scheduled foreclosure sale, WBL obtained an unnoticed temporary restraining order in the Jackson County Chancery Court. After a hearing, the chancery court dissolved the TRO and dismissed WBL's motion for injunctive relief. The foreclosure sale proceeded on March 18, 2020. West Town's $2.195 million credit bid was the only bid. West Town transferred its interest in the hotel to Patriarch, LLC, a single-purpose entity established to hold properties West Town has acquired in foreclosure. Patriarch then sold the property to a third party for $1.9 million.

### III.    WBL's Complaint and West Town's Counterclaim

¶11. The day after the foreclosure sale, WBL filed a complaint against West Town in the Jackson County Circuit Court. WBL amended its complaint a month later to add Patriarch as a defendant. Against West Town and Patriarch (collectively, West Town), WBL asserted a claim for a declaratory judgment that West Town bid for and sold the Biloxi hotel for "well below fair market value." WBL also claimed it was entitled it to compensatory damages.

---

[2] This indebtedness, of course, was also secured by the Arkansas hotel, which West Town moved to foreclose upon as well. West Town offered the highest bid for the Arkansas property at $1.68 million.

4

Specifically, WBL asserted a claim for an "equitable credit," alleging West Town "failed to bid and purchase the Mississippi Property at a commercially reasonable value and then failed to extend fair credit to WBL." Finally, WBL asserted "wrongful and unlawful foreclosure." But WBL's counsel later clarified that WBL was not seeking to set aside the foreclosure sale. Instead, WBL sought to recover as damages from West Town the difference between the actual value of the Biloxi hotel and West Town's purchase price.

¶12. The crux of WBL's claims was that the hotel, which had been appraised in 2015 for more than $5 million was more valuable than $2.195 million. And had West Town bid, for example, the amount of the January 2020 appraisal—$2.7 million—WBL insists there would have been enough equity in the Biloxi hotel to satisfy both West Town *and* WBL's indebtedness. The same was true for the Arkansas hotel, WBL claimed. Based on the true value of both properties, which WBL estimated to be around $7.8 to $7.9 million, there should have been plenty of equity to satisfy both lienholders.[3]

¶13. Days after filing the amended complaint, WBL filed a *lis pendens* notice against the Biloxi hotel property, asserting an interest in the property.

¶14. West Town answered the amended complaint and asserted a counterclaim. In its counterclaim, West Town alleged that "WBL's filing of its Complaint in this matter was a

---

[3] WBL had also named as defendants DJ Lodging, DJ Lodging's managing member, and a third party, Sonny Bhakta. WBL claimed Bhakta had been willing to purchase the Biloxi hotel for $3 million, but he unlawfully conspired with West Town to buy the foreclosed hotel at a reduced price that would not satisfy WBL's interest. Later, WBL dismissed its claims against Bhakta. While WBL mentions Bhakta and the alleged conspiracy in the facts section of its brief, it does not raise on appeal the dismissal of its conspiracy claim. Instead, its appeal solely rests on *Shutze* and its purported equitable-credit claim.

5

willful and intentional act calculated to cause damage to the Counter-Plaintiffs by causing them to incur unnecessary expenses in defending the Complaint and attempting to have this Court render a judgment against them for damages for which WBL has no legal right of recovery under Mississippi law." West Town sought compensatory and punitive damages and attorney's fees.

¶15.   West Town then moved to cancel the *lis pendens* notice. The trial court granted the motion by agreed order. West Town had also sought to amend its counterclaim to include allegations related to the *lis pendens* notice. This motion was never ruled upon.

¶16.   Months later, West Town moved for summary judgment. In both its written response and at the summary judgment hearing, WBL defended against the motion by citing ***Shutze***. According to WBL, ***Shutze*** gave WBL a legal right as a junior lienholder to seek money damages against West Town. West Town countered that ***Shutze*** created no such right and that all of WBL's claims were based on a purported legal right that did not exist. Following a hearing, the trial court agreed with West Town. Specifically, the trial court rejected WBL's interpretation of ***Shutze***, finding the lender had read into the opinion "a legal remedy that does not exist."

¶17.   The trial court granted West Town's motion and dismissed all of WBL's claims, determining there were no genuine issues of material fact as to any of the counts in the amended complaint and that all defendants[4] were entitled to a judgment as a matter of law. The trial court also dismissed West Town's counterclaim.

---

[4] *See supra* n.3.

6

¶18. With no remaining claims or parties, the trial court's judgment was final. WBL appealed. And West Town cross-appealed.

**Discussion**

### I. WBL's Appeal: *Equitable-Credit Claim*

¶19. WBL's entire appeal hinges on its interpretation of *Shutze*. Specifically, WBL asserts that the trial court reversibly erred by granting summary judgment to West Town because *Shutze* "unequivocally" created the cause of action asserted by WBL. We review the trial court's grant of summary judgment de novo. *Hyde v. Martin*, 264 So. 3d 730, 734 (Miss. 2019). We also review questions of law, such as the interpretation of *Shutze*, de novo. *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 14 (Miss. 2007). And after de novo review, we affirm the trial court's grant of summary judgment.

¶20. According to WBL, *Shutze* created "an affirmative equitable credit claim for junior lienholders for damages." But this stretches *Shutze* too far. *Shutze* was a lien-priority case dealing with a future advance clause, which is not at issue in this case. *Shutze*, 607 So. 2d at 57. As far as this case goes, *Shutze* at best recognized the long-standing principle that a junior lienholder is equitably entitled to any *surplus proceeds* from the foreclosure sale. *Id.* at 66 (citing *Builders Supply Co. of Hattiesburg v. Pine Belt Savs. & Loan Ass'n*, 369 So. 2d 743 (Miss. 1979)). *Shutze* did not, as WBL contends, create a legal right for the junior lienholder to sue a senior lienholder for *legal damages* if no surplus proceeds materialize.

### A. Nonjudicial Foreclosure

¶21. "Mississippi was one of the first states to adopt non-judicial foreclosure of mortgages and deeds of trust on real property," the now-dominant type of foreclosure across the United States. *Peoples Bank*, 434 So. 2d at 708 (citing *Sims v. Hundly*, 3 Miss. 896, 898-99 (1838)). "Under our procedure the property is conveyed by the grantor (trustor) to a trustee, subject only to the requirements that the grantor/debtor perform the conditions and provisions of the deed of trust." *Id.* (citing Miss. Code Ann. (1972) § 89-1-43). Upon the debtor's default "in performance of the conditions of the trust, the trustee is empowered to foreclose." *Id.*

¶22. "[A] valid and effective foreclosure extinguishes all subordinate rights." *Shutze*, 607 So. 2d at 65. The trustee "has the exact same power to convey free and clear of junior liens or interest as though he held a deed absolute filed for record the day the deed of trust was recorded." *Peoples Bank*, 434 So. 2d at 708. A trustee's deed cuts off any subordinate "rights in and to the property," which "transfer[] to the foreclosure sale proceeds[.]" *Id.*

¶23. In this case, WBL does not dispute that West Town's Deed of Trust on the hotel property was superior, having been properly recorded first. *See id.* ("Once properly filed for record, the deed of trust is entitled to priority according to date of filing."). Nor does WBL challenge the validity of the foreclosure sale. So any rights WBL had in and to the hotel property were extinguished by the foreclosure sale and "transferred to the foreclosure sale proceeds." *Id.* "The general rule is that, where a surplus remains after satisfying a senior mortgage, it should be applied on the junior mortgage." *Builders Supply*, 369 So. 2d at 745 (quoting *Great S. Land Co. v. Valley Sec. Co.*, 162 Miss. 120, 137 So. 510 (1931)).

8

¶24. Here, that general rule does not apply because there were no proceeds, let alone surplus proceeds, to which WBL could assert an equitable claim. *See Shutze*, 607 So. 2d at 66 (acknowledging the "rights of junior creditors who follow the proceeds of the sale and assert equitable claims"). The $2.195 million purchase price did not fully satisfy DJ Lodging's debt to West Town. Further, after West Town transferred the property to related entity Patriarch, the hotel was sold to a third party for only $1.9 million. Still, WBL insists, regardless of West Town's bid, West Town is accountable to WBL for the difference between the commercially reasonable value of the hotel and DJ Lodging's indebtedness to West Town.

### B.   *Shutze*

¶25.   As support, WBL relies on language from *Shutze* that drew from actions by creditors pursuing deficiency judgments against debtors whose collateral had been foreclosed upon:

> For purposes of deficiency judgment against the debtors, our cases have long recognized that the terms of foreclosure or other dispositions must be commercially reasonable and that, particularly where the foreclosing creditor buys at foreclosure, it must give the debtor fair credit for the commercially reasonable value of the collateral.

*Shutze*, 607 So. 2d at 66 (citing *Wansley v. First Nat'l Bank of Vicksburg*, 566 So. 2d 1218, 1221-22, 1224-25 (Miss. 1990)). This Court held that "same principle protects the rights of a junior lien creditor such as Thomas E. Shutze." *Id.* (citing *Builders Supply*, 369 So. 2d 743). Based on this holding, WBL insists this Court created a right by *any* junior lienholder whose rights to the collateral were foreclosed by the purchase by a senior lienholder to sue that senior lienholder for an "equitable credit."

¶26. But *Shutze* can easily be distinguished by—and limited to—its facts.

¶27. The *Shutze* opinion opens by emphasizing "[t]his is a lien priority case." *Id.* at 57. Thomas E. Shutze was not just any junior lienholder. Thomas E. Shutze was a judgment creditor who perfected his junior lien in the amount of $4,541.78 *before* another junior lienholder, Credithrift of America, Inc., advanced the debtor an additional $2,785.13. *Id.* at 58. So the specific priority question was the enforcement of a future advance clause. *Id.* Under the terms of the future advance clause—or "dragnet clause"—between Credithrift and the debtor, any future advances by Credithrift would enjoy the same lien priority as the original loan. *Id.* Credithrift, the sole bidder at the foreclosure sale, purchased the debtor's home for the total amount of indebtedness, $10,739.65. *Id.* Credithrift then satisfied the debt of the first lienholder, Deposit Guaranty Bank, which was owed $37,145. *Id.* at 65. But Credithrift did not satisfy Shutze's $4,541.78 lien because it argued Shutze's lien was fully junior and thus his rights had been cut off by the foreclosure sale. *Id.* at 58.

¶28. Ultimately, this Court determined the future advance clause was enforceable. So Shutze's judgment lien was wholly junior and subordinate to Credithrift's. *Id.* at 58-59. Still, Shutze insisted the value of the collateral was such that his judgment lien should have been paid in full. And this Court found validity in Shutze's argument. *Id.* at 65. Based on the quick sales appraisal value of the home—$60,000—it appeared that, even after Credithrift paid Deposit Guaranty and fully satisfied its own debt, there should have "been an equity left in the home from (the proceeds of) which Shutze's judgment might be satisfied." *Id.* It was in this context that this Court determined that Shutze—a junior

10

lienholder displaced by a dragnet clause—should be treated similarly to a debtor facing a deficiency judgment and should be given a "fair credit" based on the commercially reasonable value of the collateral. *Id.* at 66. Because nothing in the record showed "whether Credithrift has disposed of the property for a profit or a loss, nor whether such a disposition may have been commercially reasonable, nor, for that matter, do we know whether Credithrift has disposed of the property at all," this Court remanded the case to the chancery court. *Id.*

¶29. Turning to this case, there is no lien priority issue. WBL is not "a junior lien creditor *such as Thomas E. Shutze*," because WBL did not lose lien priority status based on a dragnet clause. *Id.* (emphasis added). WBL tries to broaden *Shutze*'s holding beyond its fact-specific context. But WBL can cite no case in which we have applied *Shutze*'s fair-credit principle to any junior creditor besides Thomas E. Shutze. WBL cites a pair of Mississippi real-estate-law treatises for the broad proposition that a foreclosing senior lienholder must account to a junior lienholder for the commercially reasonable value of the collateral. *Mississippi Real Estate Foreclosure Law* § 4:14 (2d ed.), Westlaw (database updated Sept. 2022); 6 Jeffrey Jackson, Mary Miller, Donald Campbell, et al., *Mississippi Practice Series: Encyclopedia of Mississippi Law* § 51:55 (2d ed.), Westlaw (database updated Oct. 2022). Both those treatises make no such leap. *See id.* Instead, both treatises acknowledge that *Shutze*'s principle applies in the context of future advance clauses.[5] *Id.*

---

[5] For example, one of the two treatises, citing *Shutze*, explains:

Mississippi law *as to the enforceability of a future advance clause* is that a mortgagee may renew or refinance the debt or make future advances after a

11

¶30.    But even if *Shutze*'s principle applied to junior lienholders more broadly, as Presiding Justice Kitchens insists it does, *Shutze* still would not entitle WBL to the *legal* remedy it seeks—money damages.  Instead, *Shutze*'s holding was rooted in the *equitable* principle that any property rights by a junior lienholder extinguished by a foreclosure sale transfer to the *proceeds* of the sale.  *Shutze*, 607 So. 2d at 66 (citing *Builders Supply*, 369 So. 2d 743).  In *Shutze*, Thomas E. Shutze's equitable claim was remanded to the chancery court because it was unclear whether Credithrift  disposed of the property at all—let alone for a profit.  *Id.*  But in this case, the undisputed record shows West Town, through Patriarch, sold the hotel for a loss, not having satisfied the debt DJ Lodging owed it.  In other words, there are no surplus proceeds on which to make an equitable claim.

¶31.    Of course, WBL rests its claim on its argument that there *should have been* proceeds had West Town bid a commercially reasonable price.   In fact, it goes so far as to suggest Patriarch sold the hotel to a third party for a loss in order to deprive WBL of its equitable interest.  But WBL's argument ignores that there were other ways for WBL to protect its interest in the hotel sale proceeds.  For example, if West Town's bid was truly as fraudulently low as WBL has suggested, the junior lienholder could have tried to set aside the foreclosure sale. *See **Allied Steel Corp. v. Cooper***, 607 So. 2d 113, 118 (Miss. 1992) ("[A]bsent any

> junior lienholder has enrolled his judgment and perfected his lien, and still have priority over the junior lienholder.  Any foreclosing mortgagee is responsible to junior lienholders to conduct a "commercially reasonable" sale, and must account to junior lienholders for any difference between the "commercially reasonable" value and the foreclosing mortgagee's indebtedness, regardless of the mortgagee's bid.

Jackson, *supra*, § 51:55 (emphasis added) (citations omitted).

irregularity in the conduct of a foreclosure sale, it may not be set aside unless the sales price is so inadequate as to shock the conscience of the Court 'or to amount to fraud.'" (quoting **Wansley**, 566 So. 2d at 1224)). Additionally, if the hotel was actually worth more than the $2.195 million West Town bid on it—and the $1.9 million Patriarch later sold it for—WBL could have bid on the hotel itself and, after satisfying West Town's superior lien, satisfied its own indebtedness from the proceeds of the sale of the hotel. This is what Credithrift, the second lienholder, did in **Shutze**.[6] *See* **Shutze**, 607 So. 2d at 58.

¶32. What WBL cannot do is what it has attempted to do in this case. It cannot allow West Town to buy the hotel in foreclosure and thus extinguish WBL's subordinate rights in the hotel but then sue West Town for an "equitable credit" based on the alleged true value of the hotel. Because WBL has no right to demand legal damages from West Town, a senior lienholder, the circuit court was right to dismiss WBL's claims on summary judgment. *See*

---

[6] In his separate opinion, Presiding Justice Kitchens characterizes these recognized remedies as "drastic" and "extremely impractical" for junior lienholders which are owed only a relatively small amount. CIRO Op. ¶¶ 40, 48. But it is Presiding Justice Kitchens's proposed remedy—on the one hand allowing the foreclosure sale to stand as valid but on the other hand allowing the junior lienholder to challenge the purchase price as "unfair"—that is unworkable and potentially disruptive to the mortgage industry. CIRO Op. ¶ 48.

A senior lienholder who purchased the property in a valid foreclosure sale should not have to constantly look over its shoulder, worried that an unsatisfied junior lienholder will deem the purchase price unfair and sue them. Instead, the senior lienholder should be able to purchase the property in foreclosure with confidence, knowing its valid foreclosure extinguishes all subordinate rights to the property. And the "rule is well entrenched" that only shockingly low purchase prices bring the validity of a foreclosure sale into question. **Peoples Bank**, 434 So. 2d at 709 (citing **Smith v. Gen. Invs., Inc.**, 246 Miss. 765, 769, 150 So. 2d 862, 864 (1963); **Cent. Fin. Servs., Inc. v. Spears**, 425 So. 2d 403 (Miss. 1983)).

13

Miss. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if . . . the moving party is entitled to a judgment as a matter of law.").

¶33.     We affirm that dismissal.

###     II.     West Town's Cross-Appeal: Dismissal of Counterclaim

¶34.     We also affirm the trial court's dismissal of West Town's counterclaim.

¶35.     On cross-appeal, West Town characterizes its counterclaim as tortious interference with business relations. Originally, West Town based its counterclaim on WBL's filing of its allegedly baseless complaint against West Town. Later, West Town sought to amend its counterclaim to add allegations that WBL's filing a *lis pendens* notice amounted to tortious interference because it clouded the hotel's title and Patriarch's ability to resell the property. While West Town noticed a hearing for both its motion to amend its counterclaim and motion for summary judgment, it failed to obtain a ruling on its motion to amend. On cross-appeal, West Town asserts the trial court's error was two-fold—(1) the court not only erroneously dismissed West Town's counterclaim, but (2) it also failed to consider West Town's motion to amend.

¶36.     But the second claim—that the trial court should have considered West Town's motion to amend—is clearly waived. "This Court has repeatedly held that 'it is the responsibility of the movant to obtain a ruling from the court on motions . . . and failure to do so constitutes a waiver.'" *Evans v. State*, 725 So. 2d 613, 708 (Miss. 1997) (quoting *Johnson v. State*, 461 So. 2d 1288, 1290 (Miss. 1984)). Because West Town did not obtain a ruling on its motion to amend, that motion is deemed abandoned and is not eligible for

14

appellate review.   UCRCCC 2.04 ("It is the duty of the movant, when a motion or other pleading is filed, including motions for a new trial, to pursue said motion to hearing and decision by the court.  Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion[.]").

¶37.   Consequently, the first claim—that the counterclaim should not have been dismissed—likewise fails.  In arguing against dismissal, West Town relies exclusively on the allegations asserted in its proposed amended counterclaim related to WBL's filing a *lis pendens* notice.  These allegations were not part of West Town's original counterclaim, which was the counterclaim that was dismissed.

¶38.   Because West Town cites no actual pleadings to support its claim against dismissal, we affirm the trial court's dismissal of its counterclaim.

¶39.   **ON DIRECT APPEAL: AFFIRMED.  ON CROSS-APPEAL: AFFIRMED.**

**COLEMAN, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, C.J., KING, P.J., AND CHAMBERLIN, J.**

**KITCHENS, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶40.   I agree that the circuit court was correct in granting summary judgment to the foreclosing senior creditor. In *Shutze v. Credithrift of America, Inc.*, 607 So. 2d 55, 66 (Miss. 1992), we held that, when the foreclosing senior creditor purchases the subject real property at foreclosure, a junior creditor has an equitable remedy after foreclosure if the purchase price was for less than fair market value. We recognized the "separate and distinct rights of junior creditors who follow the proceeds of the sale and assert equitable claims."

15

*Id.* at 66. For example, if a senior creditor is the only bidder at a nonjudicial foreclosure sale and purchases the property for a price below fair market value so that little or no surplus remains from which to pay the junior creditor, but then the senior creditor promptly sells the property for a higher, fair market value price that would have resulted in surplus funds had such a price had been paid at foreclosure, a junior creditor can pursue its monetary share of that equity without taking the more drastic step of seeking to set aside the foreclosure.[7] *Id.*

¶41.    Here, we should affirm the trial court's decision because the facts in the record support that no equity remained in the property following the foreclosure sale and subsequent disposition at arm's length to a third party at a loss. The record establishes that there were no proceeds or equity for the junior creditor to follow, even allowing for scrutiny of the fair market value of the foreclosure price. I agree that **Shutze** did not create a cause of action for a junior creditor to recover from a senior creditor when the sale price was purportedly unfair but a fair price would not have produced surplus funds.

¶42.    I write separately to express a difference of opinion with regard to portions of the majority's analysis of **Shutze** as applied to this case. I disagree with the majority's assertion that the equitable relief outlined in **Shutze** is limited to cases in which the junior creditor becomes a junior creditor via the mechanism of a future advance clause. Neither party in this appeal makes or addresses this argument. In fact, senior creditor West Town Bank & Trust (West Town) acknowledges in its brief that the equitable principles of **Shutze** could apply

---

[7] Our opinion in **Shutze** provides a detailed analysis of why it is appropriate to have an equitable remedy for junior lienholders that does not require asserting fraud or setting aside the foreclosure sale. *Id.* at 65-66.

16

to provide relief to junior creditor WBL if equity had remained in the property following the foreclosure sale. How a junior creditor came to be a junior creditor is not relevant to whether that creditor is entitled to pursue equitable relief when a fair sale of the collateral property would have resulted in monies applicable to the junior interest.

¶43.    In *Shutze*, this Court conducted a lien priority analysis and found that Shutze was the junior creditor.[8] *Id.* at 57. Then, having found him to be the junior creditor, we turned to his alternative argument that as the junior creditor, he had a right to seek equitable relief if the senior creditor purchased the subject property at foreclosure for an unfair price. *Id.* at 66. We transitioned from the lien priority analysis to the equitable relief analysis by starting a new header and saying:

**V.**

> Alternatively, Shutze argues, even if his judgment lien is wholly junior and subordinate to Credithrift's rights, the value of the collateral was nevertheless such that he should be paid in full.

*Id.* at 65. We agreed that this argument might have merit and remanded for the chancellor to adjudicate whether the foreclosure sale to the senior creditor had been commercially reasonable. *Id.* at 66.

¶44.    We held:

---

[8] At the time Shutze attached his judgment lien to the subject property, a senior deed of trust interest containing a future advance clause already was attached to the property. *Shutze*, 607 So. 2d at 57. When the advance clause subsequently was exercised with the grant of another loan to the borrower from the senior creditor, we held that the newer loan related back to the senior interest and therefore took priority over Shutze's judgment lien. *Id.*

17

> For purposes of deficiency judgment against the debtors, our cases have long recognized that the terms of foreclosure or other dispositions must be commercially reasonable and that, particularly where the foreclosing creditor buys at foreclosure, it must give the debtor fair credit for the commercially reasonable value of the collateral. *The same principle protects the rights of a junior lien creditor such as Thomas E. Shutze*.

*Id.* (emphasis added) (citations omitted). We then remanded the case with detailed instructions concerning the issues the chancellor should adjudicate on remand:

> The Chancery Court made no finding of fact of the value of the property at the time of foreclosure or at any other time . . . . Nothing before us shows whether [the senior creditor] has disposed of the property for a profit or a loss, nor whether such disposition may have been commercially reasonable, nor, for that matter, do we know whether [the senior creditor] has disposed of the property at all.

> All of this leaves us with the firm and definite conviction that there is unfinished business below. We remand this case to the Chancery Court for further proceedings consistent with this opinion.

*Id.*

¶45.   The majority asserts that *Shutze* is inapplicable to this case because *Shutze* was a lien priority case and this is not a lien priority case. Maj. Op. ¶¶ 4, 7. *Shutze* started out as a lien priority case, and the priority analysis takes up most of the opinion. *Shutze*, 607 So. 2d at 57. But *Shutze* stopped being a lien priority case (and stopped being a case about future advance clauses) when this Court declared Shutze to be the junior creditor and turned to his alternative argument for equitable relief. *Id.* at 66.

¶46.   Shutze and WBL SPO I, LLC (WBL), are similarly situated. Shutze was classified as a junior creditor despite his best arguments to the contrary, whereas WBL conceded at the outset that it is a junior creditor. Both challenged whether the senior creditor paid fair value

18

for the subject property at foreclosure. Shutze filed a judgment in the judgment roll, whereas WBL had a loan directly attached to the realty by its original terms. For purposes of whether each is a junior creditor entitled to a commercially reasonable foreclosure sale, the distinction is one without a difference.[9] I therefore disagree with the majority that **Shutze**'s holding on equitable relief is limited to the facts of that case.

¶47.    However far this Court now decides that the equitable rights of junior creditors should or should not extend when the senior creditor buys the subject property at foreclosure, in **Shutze** we held that junior creditors in general have equitable rights after the foreclosure sale when the foreclosure was not commercially reasonable. **Id.** As we rightly noted in **Shutze**, this equitable principle is relevant "particularly where the foreclosing creditor buys at foreclosure[.]" **Id.** Senior creditors are often the only bidder at nonjudicial foreclosure sales and may lack the motivation and accountability to make a fair value bid. Often the bid is equal to the unpaid balance of the debt.

¶48.    I agree with the majority that **Shutze** does not create a cause of action for a junior creditor to get an equitable credit or monetary damages from a senior creditor when no equity in the property is left. I would make clear, however, that we are not overruling **Shutze**. If the trial court lacks sufficient evidence of the commercial reasonableness of the foreclosure process or the fair value of the property, remand may be proper in cases such as this. I do not

---

[9] The majority notes that relevant local secondary sources reference the **Shutze** holding as being in the context of future advance clauses. That case would naturally return when searching that topic; that does not operate to make the case's more general holding on equitable remedies exclusive to junior creditors who acquired that status by operation of an advance clause.

take the position (as the majority arguably takes) that a junior creditor's only options are the more drastic strategies of alleging fraud and seeking to set aside the sale, which we squarely rejected in *Shutze*. *See id.* at 65-66; Maj. Op. ¶ 31. Additionally, Mississippi law clearly does not require (and West Town acknowledges this in its brief) the junior creditor to bid at foreclosure in order to follow the proceeds after the sale if the sale was unfair. This is an option of course, but it is an extremely impractical one in situations in which the debt owed the junior creditor is small compared to a fair value price of the property. It is unclear to me whether the majority overrules *Shutze* or simply holds that, in this case, remand is simply unnecessary because the trial court had the factual support in the record to deny equitable relief.

¶49.    In *Shutze*, we noted that the foreclosure price was substantially below a relevant but not dispositive appraisal, and we remanded the case for fact finding on the true fair value of the property including what happened to the property after foreclosure. *Id.* at 66. On remand, the foreclosing creditor provided evidence that the property subsequently had been sold at a loss in an arms-length transaction. Taking that to be the best evidence of the fair value of the property in those circumstances, the trial court dismissed Shutze's claim with prejudice.[10] Here, the trial court had the benefit of a more developed record including multiple appraisals

---

[10] We know the subsequent trial history of *Shutze* because those court documents have been included in this record by West Town.

20

and evidence that the senior creditor transferred the property to a subsidiary that then sold the property in an arms-length transaction to a third party at a further loss.[11]

¶50.   I concur with the majority's affirming of the trial court's grant of summary judgment to the defendant senior creditor. I would make clear, however that *Shutze* remains good law so that, depending on the circumstances of the case, a junior creditor can seek equitable relief after a foreclosure sale when the purchase of the property by the foreclosing creditor was less than fair market value. *Id.* The scope of this relief is limited to following the proceeds/equity of the sale under fair market value standards. Given that we last had occasion to address this circumstance more than thirty years ago, best industry practices appear to operate successfully so that the occasion to pursue this equitable avenue does not arise often. But it is an avenue that still should exist, particularly when the senior creditor is the only bidder at a nonjudicial foreclosure.

**RANDOLPH, C.J., KING, P.J., AND CHAMBERLIN, J., JOIN THIS OPINION.**

---

[11] I recognize WBL's argument that additional circumstances are relevant to evaluating West Town's purportedly unfair bid price, such as that West Town may have expected its losses to be offset by the terms of a loan agreement with the Small Business Administration. But looking at the numbers in the record including the various appraisals, the losses taken compared to the original loans, and the subsequent sale to a third party, the record simply does not factually support that the true fair value of the property would have resulted in a surplus applicable to WBL's junior interest.